## Richmond.

### HATCHER AND ALS. V. CREWS AND ALS.

February 28, 1884.

1. FRAUDULENT CONVEYANCES—*Post-nuptial settlements—Burden of proof—Answer.*—Post-nuptial settlements are presumed to be voluntary, and the burden of showing they are made upon valuable considerations rests on those claiming under them. Where bill charges them to be voluntary, the answer does not shift the burden, and is not evidence for the respondents, but the defence must be proved. *Fink* v. *Denny,* 75 Va. 663.

2. IDEM—*Creditors—Existing—Subsequent—Case at bar.*—H and wife conveyed in 1872, property to C & C, to secure advances by them to a firm whereof H was a member. After H had repaid advances, and his firm had stopped business, in 1873, C & C acknowledged receipt of payment for the property, and agreed, by unrecorded contract, to convey it to trustees for separate use of H's wife, free from his debts theretofore or thereafter created. Then H's firm was considerably indebted, and it was not shown that those debts were paid or secured, or that the members of the firm were able to pay them. The conveyance was made by C (survivor of C & C) in 1876. In suit by creditor of H, whose debt was created in 1874, assailing the contract and conveyance.

HELD:

    1. Both contract and conveyance are fraudulent as to H's existing creditors, and therefore, as to his subsequent creditors.

    2. The contract being void, and the assailing creditor's debt having been created before the deed, he must be regarded as an existing creditor.

3. EVIDENCE—*Depositions in another suit.*—Deposition of witness taken in one suit, may be read as evidence against him, as an admission, in another suit where the subject matter is the same.

Appeal from decree of corporation court of the town of Danville, rendered 1st November, 1880, in suit wherein

Wm. J. Crews, surviving partner of himself and others, was plaintiff, and E. M. Hatcher and C. J. Hatcher, his wife, and her trustees and others were defendants. Its object was to set aside as fraudulent certain conveyances, under which the trustees held certain real estate, and subject it to pay the debts of the husband.

Opinion states the case.

*Guy & Williams,* for the appellants.

*E. E. Bouldin, Green & Miller, Withers & Barksdale,* and *W. W. Henry,* for the appellees.

Hinton, J., delivered the opinion of the court.

The decree complained of sets aside as fraudulent and void a contract dated on the —— day of ———, 1873, between E. M. Hatcher, of the one part, and M. H. Clark and T. C. Corbin, of the other part, and a deed from the said Corbin and wife to H. C. Hatcher, trustee, dated May 2, 1876, under which the appellants claimed and held certain property situated on Craghead street, in the town of Danville, known in the record as "the Craghead street property," as the separate estate of C. J. Hatcher. And it also sets aside and annuls a deed from T. J. Lee and wife to the same E. M. Hatcher, dated September 4, 1875, under which certain other property situated on Grove street in that town, and called in the record "the Grove-street property," was held as the separate estate of the same C. J. Hatcher upon the same grounds. And it is upon the propriety of this decree that we now proceed to pass, commencing, however, for the sake of convenience, with that part thereof which annuls the contract, or memorandum, and the deed in regard to "the Craghead-street property."

The main facts in respect to this property, as we learn

from the testimony of T. C. Corbin, a witness called by the appellants, and whose testimony is nowhere contradicted, are as follows, namely : that prior to the 8th day of November, 1872, this property was owned by the appellant, E. M. Hatcher, who, with his wife, on that day conveyed it to the firm of Clark & Corbin, ostensibly for the consideration of $1,425, but in reality as security for advances made by that firm to the extent of $1,500, more or less, in purchasing tobacco for the firm of Simonton, Jones & Hatcher, of Atlanta, Ga., of which E. M. Hatcher was a member. That afterwards, and after the balance due Clark & Corbin had been paid them by Hatcher, which was after the firm of Simonton, Jones & Hatcher had been burnt out, the contract or memorandum, dated on the ——— day of ———, 1873, was executed by the said Clark and Corbin, in which they acknowledged the receipt of $1,500 from E. M. Hatcher in payment for this property, and agree, "in consideration of the said sum of fifteen hundred dollars, to them paid as aforesaid, . . . to convey the said property to E. M. Hatcher, or to such trustee as he may name, and at such time as he may desire, in trust for the sole and separate use of Cassandra J. Hatcher, *free from the debts of her husband,* and with power to sell on the written request of said Cassandra J. Hatcher," &c. That on the 2d day of May, 1876 (Clark having in the meanwhile died), Corbin and wife did convey to H. C. Hatcher, as trustee for the said Cassandra J. Hatcher, one undivided moiety of this property.

Now, upon this state of facts, *it being admitted by E. M. Hatcher,* in the joint answer of himself and wife, that the firm of Simonton, Jones & Hatcher was, on the 8th of November, 1872, "considerably indebted," and there being not one iota of proof in the record that these debts have been since paid, secured to be paid, or that the members of that firm, singly or collectively, have the ability to pay them, how

can we come to any other conclusion than that the two in-
struments, made subsequently to the deed from Hatcher to
Clark and Corbin, were made with an actual intent to
hinder, delay, and defraud the creditors of Simonton, Jones
& Hatcher. *Fink* v. *Denny*, 75 Va., 663; *Johnston* v.
*Zane's Trustees*, 11 Gratt. 557. He knew that the law re-
quired that he should appropriate this property to the pay-
ment of those debts, and yet he not only does not do this but
permits this property to remain for more than three years
standing in the name of other parties, upon the flimsy
protext that he could not select or find a suitable trustee,
and by a secret and unrecorded agreement exacts of those
parties that they shall convey to a trustee, to be held as
the separate estate of his wife, and, in the language of the
deed from Corbin and wife to H. C. Hatcher, trustee, "free
from all liability for the debts and contracts of every kind,
as well those hereafter as *those heretofore contracted* and
made by  . . .  the said E. M. Hatcher." I am aware
that it may be objected that this language is not the lan-
guage of the appellant, E. M. Hatcher, and is such language
as is frequently used in deeds settling separate estate upon
married women, but it was beyond doubt used at the in-
stance of E. M. Hatcher, and I cannot rid myself of the
belief that its employment has, in view of the circum-
stances of this case, a special significance. If we see a man
lingering behind some place of shelter when confronted by
some visible danger, we naturally and immediately infer
that his purpose is to withdraw his person from its reach;
so when we perceive this debtor, with this "considerable
indebtedness" hanging over him, not simply suffering his
property to remain in the name of other persons, but
actively engaged in having it conveyed, without valuable
consideration, to another, whilst he not only makes no pro-
vision for the payment of those debts, but does business
under an assumed name, we are irresistibly driven to the

conclusion that his object is to secure his property from the just demands of his creditors.

If, then, as I am forced to conclude was the case here, this contract, dated on the —— day ————, 1873, and the deed from Corbin and wife to H. C. Hatcher, trustee, were actually fraudulent as to his then existing creditors, who were the creditors of Simonton, Jones & Hatcher, they were also fraudulent as to his subsequent creditors. And whether the fraud relates to one class or the other class, the effect is the same, and the subsequent creditor may, upon the strength of the fraud, successfully impeach the conveyance. The transaction being a nullity, cannot stand in the way of any creditor. *Johnson, Trustee* v. *Wagner & Sons*, 76 Va. 590. It is therefore fraudulent as to the appellee, even if he be regarded as a subsequent creditor. But was he a subsequent creditor? Does he fall within that category? I think that he does not. His debt, which after being reduced by the application of a credit of about $2,600, arising from the sale of some property held in trust as security therefor, amounts to about $7,300, and was contracted prior to the month of July, 1874. And the contract entered into in 1873 between E. M. Hatcher and Clark & Corbin was never recorded, and was therefore null and void as to the creditors of E. M. Hatcher, and could not impress the land in the hands of Clark & Corbin with a trust in favor of Mrs. Hatcher. Code 1873, ch. 114, § 5; 2 Minor's Inst. p. 871; *Stokes* v. *Oliver*, 76 Va. 72. And the suggestion that at the time the deed from E. M. Hatcher to Clark & Corbin was executed, there was an agreement also entered into that this property should be conveyed to Mrs. Hatcher, when the debt it was intended to secure should have been extinguished, not being sustained by the proofs (if indeed it would be of any avail if it could, upon which point I express no opinion), Mrs. Hatcher can only claim under the deed of May 2, 1876, and that deed being voluntary was by the

express terms of the statute void as to the debt of the appellee, which had been in existence at that time for nearly or quite two years.   Code 1873, ch. 114, § 2.

Now, as to the conveyance of the Grove street property, it was a post-nuptial settlement; and under the doctrine laid down by this court in the cases of *Blow* v. *Maynard*, 2 Leigh, 30, and *Fink* v. *Denny*, 75 Va. 663, it is presumed to be voluntary and void, and it not only rests upon the appellants to show that it was made for a valuable consideration moving from Mrs. Hatcher, but the answer to the bill charging it to be voluntary is not allowed to shift that presumption, nor is it held to be evidence for the respondents, but on the contrary, the defence set up in the answer must be established by proof.   Now, by what means is this sought to be established?   It is stated by Mrs. Hatcher in the joint answer of herself and husband to the original and amended bill in this case, that this Grove street lot was purchased partly with the proceeds of a house and lot formerly held by her as separate estate in the city of Atlanta, Georgia, amounting to about $525, and partly with money borrowed of, and which she still owes to, her mother-in-law, Mrs. Updegraff; and that the improvements upon said lot were built with the money remaining over of that which she borrowed of Mrs. Updegraff; $1,375 money borrowed of the Building and Loan Association of Danville, for which they have a lien on this and the Craghead street property, and $790 or thereabout derived from rents and other moneys not very large in amounts, which could be readily accounted for if necessary.

As to the money alleged to have been borrowed of Mrs. Updegraff, it is only necessary to say that the testimony of Mrs. Updegraff shows that she did give or loan to her son, E. M. Hatcher, about $1,000 in money to pay for timbers which were at the depot at the time of the commencement of the building, but that she never did loan any money to

Mrs. Hatcher; and it is a fair inference, from the testimony, that at the time she loaned or gave this money to her son, that the lot had been fully paid for. And as to the house and lot in Atlanta, which Mrs. Hatcher claims to have purchased of a Mr. Edgar for the sum of $300, and to have sold for the sum of $525, it need only be said that the proof establishes that she never owned *any house* and lot in the city of Atlanta. She did, as the record discloses, have standing in her name for the space of two days a *vacant lot*, which the deed shows was purchased for the sum of $700, and which was conveyed by her to H. C. Hatcher for the same amount on the 20th day of January, 1873. But this lot was not purchased from Mr. Edgar; was situated on a street the name of which Mrs. Hatcher does not know, and even according to her contention, was purchased with money which her husband improperly allowed her to receive for the board of some of the hands employed by the firm.

It is needless to prolong this investigation of the evidence. It is clear that this Grove street property was purchased with the money of E. M. Hatcher after he became indebted to the appellee, and that it was attempted to settle it upon his wife as her separate estate, in order to hinder, delay and defraud his creditors.

It is objected, however, that the deposition of E. M. Hatcher, taken in a suit brought by the firm of *Crews, Rodenhizer & Co.* v. *M. H. Clark & Co.*, to subject the property of M. H. Clark & Co. to pay the debt still due the appellee in this case, was improperly admitted to be read in this suit to show the admission of E. M. Hatcher that he was concealing his property from his creditors. But we cannot assent to this. For whilst, as a general rule, it is true that the deposition of a witness taken in one suit cannot be read against him when a party to another suit; that rule can have no application here, since that was a suit in regard to

this very debt, and was admissible as an admission on the part of the appellant, E. M. Hatcher. 2 Whart. Ev. § 1120; *Tabb's Curator* v. *Cabell and als.*, 17 Gratt. 160; *Brown and als.* v. *Molineaux, Duffield & Co.*, 21 Gratt. 539.

As to the deposition of J. R. Simonton, we are of opinion that it was properly read in evidence upon the hearing of this cause, although taken before the amended and supplemental bill was filed; but if this were otherwise, we have established by the other testimony in the case that all three of these instruments are fraudulent and void, and that the decree of the corporation court of Danville is substantially right, and it must therefore be affirmed. 4 Min. Inst., Pt. 1, 970.

DECREE AFFIRMED.