# Richmond.

## PERRY AND WIFE v. RUBY AND ALS.

### JANUARY 7th, 1886.

1. POST-NUPTIAL SETTLEMENT—*p. f. voluntary—Burden of proof.*—*Post-nuptial* settlements are presumed to be voluntary, and the burden of showing that they were made upon valuable consideration is upon those claiming under them. Where the bill charges them to be voluntary the answer does not shift the burden, and is not evidence for the respondents; but the defence must be proved. *Hatcher* v. *Crews*, 78 Va. 460.

2. IDEM—*Evidence—Recitals.*—Recital in *post-nuptial* settlement of an agreement, duly executed as the consideration of the deed, is evidence against persons claiming under the settler, but not against a creditor of the settler contesting the validity of the deed. *Blow* v. *Maynard*, 2 Leigh, 29.

3. HUSBAND AND WIFE—*Incompetent witnesses.*—Where husband and wife are both parties and interested in the result of suit, neither is a competent witness. *Burton* v. *Mill*, 78 Va. 468.

4. CASE AT BAR.—In 1871 P. sold his wife's maiden land, and she joined in the conveyance, which contained no intimation of any settlement agreed then or thereafter to be made in consideration thereof on Mrs. P. Nine years afterwards P. had become much indebted, and executed a deed conveying to his wife certain real estate, reciting as the consideration $5,250 derived from the sale of his wife's maiden land, which was made with the express understanding that an equivalent was to be settled on her as and for a home. The evidence does not satisfactori'y show that the settlement was made in consideration of her joining in the conveyance of her maiden land. The period between the conveyance and the settlement is such as to negative any presumption of such an agreement. And the contract, if it had been proved, is a parol contract for land, and hence void under statute of frauds. *Blow* v. *Maynard*, 2 Leigh, 29.

5. CASES REVIEWED AND COMPARED.— *Wm. and M. College* v. *Powell*, 12 Gratt. 372, presents a case where the settlement on its face purported to be in consideration of the wife surrendering her interests in certain lands; and, accordingly, she conveyed her estate in that land *after* the settlement by her husband upon her was executed and admitted to record.

Argued at Staunton, but decided at Richmond. Appeal from decree of circuit court of Shenandoah county, entered May 29, 1885, in the consolidated cases of *John H. Hepner, complainant,* v. *Joseph Perry and Wife, &c., defendants; Wm. H. Ruby* v. *Same; John P. Funkhauser* v. *Same,* and *George W. Minnick* v. *Same, defendants.* The object of the suit was to annul a *post-nuptial* settlement of real estate made in 1880 on his wife, and subject the property to the payment of his debts. The decision was in favor of the creditors, and Perry and wife obtained an appeal to this court.

Opinion states the facts.

*Compton & Walton,* for the appellants.

*Allen & Magruder,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The facts essential to a proper understanding of the case are these: Mrs. Perry inherited from her father, William Sigler, who died in 1869, real estate in the county of Shenandoah, of the estimated value of some $9,000. The land thus inherited by Mrs. Perry was apportioned to her in the division of her father's estate, and contains 149 3–160 acres. In 1871 Joseph Perry sold and conveyed the land thus inherited by his wife to one Lemuel Allen, and his wife, the said Adeline L. Perry, joined in the conveyance, there being therein no intimation of any settlement agreed then or thereafter to be made on Mrs. Perry in consideration thereof.

Something over nine years thereafter, Joseph Perry, who was largely indebted, individually, and as a member of the firm of Moore & Perry, composed of himself and J. W. R. Moore, executed two deeds to his wife, Adeline L. Perry, one on the second day of December, 1880, by which he conveyed certain real estate to be held as separate estate, free from his debts. The consideration expressed on the face of this deed is as follows: "In consideration of the sum of $5,250 cash in hand paid, the the receipt whereof is hereby acknowledged in the following manner, to-wit: from sale of lots Nos. 7 and 11, in report of the division of the lands of William Sigler, deceased, containing 149 3–160 acres, more or less, which was the real estate that descended to said Adeline L. Perry from her said father, and the sale and conveyance of which was made with the express understanding and agreement that an equivalent for the same was to be conveyed to and settled upon the said Adeline L., as and for a home, free from any incumbrances on account of debt or charge of her said husband." The second deed was dated the 8th day of December, 1880, and by it the said Joseph Perry conveyed to his said wife, Adeline L., certain personal property. The consideration for this conveyance is also, in the main, expressed to be money arising from sale of said Adeline L. Perry's maiden property. It is, however, unnecessary to consider this deed conveying personalty, as it is not involved in the decree appealed from.

Sometime subsequent to the execution of these deeds by Joseph Perry to his wife, Wm. H. Ruby and others, complainants in said consolidated causes, respectively filed their bills, and sued out attachments in equity against Joseph Perry, who, it was alleged, was a resident of the State of Texas. The attachments were levied on the real estate aforesaid conveyed by said Perry to his wife. Joseph Perry returned from Texas, and, together with his wife, answered the several bills, denied

that they were non-residents, and then went on and defended
the allegations of the bills—viz., *that the deed of December* 2*d*,
1880, *was fraudulent.* The parties being thus at issue in respect
to the main question raised by the complainants in their seve-
ral bills—to-wit: Whether the real estate conveyed by Perry
to his wife was liable to be subjected to the satisfaction of the
claims of the complainants, creditors of Joseph Perry at the
time he made said conveyance, the proceedings by attachment
in equity were abandoned; and such proceedings were had
that all the causes were brought on to be heard by consent;
and the court below, on the 11th day of September, 1884, pro-
nounced its decree setting aside and annulling as voluntary,
fraudulent and void the said deed of December 2d, 1880, from
Joseph Perry to his wife, the said Adeline L. Perry, and
ordered an account of liens to be taken. On the coming in of
the report, a consent decree was entered submitting the causes
for decision and decree in vacation, and on the 29th of May,
1885, the court pronounced its decree for a sale of the real
estate conveyed as aforesaid to Adeline L. Perry. From that
decree these several consolidated causes are here on appeal.

The appellants assign ten errors to the decree of the court
below. These will, so far as it may be necessary to notice
them, be considered in the order in which they are presented
in the petition for appeal. The first assignment is that the
court below erred in holding the property of the appellant,
Adeline L. Perry, conveyed to her by the deed from her husband
of December 2, 1880, liable to the payment of the debts of
Moore & Perry. In support of this assignment, it is said that
the answer of both Joseph Perry and wife denied all and every
allegation of fraud, and that no proof was introduced to over-
come said answers. On the contrary, it is insisted that the
defendants below, the appellants here, assumed the burden of
proof, and did prove, by the testimony of witnesses, that there

was no fraud in the transaction; that the deed was made in pursuance of an agreement entered into at the time the maiden lands were sold to Lemuel Allen, and that the property was paid for with the money of said Adeline L. Perry.

This is a very broad contention, and certainly comprehends everything involved in this controversy, except some matters of minor importance pointed to in other assignments of error. It broadly asserts the validity of the *post-nuptial* settlement in question, and the subordination thereto of the rights of existing creditors of the settler. We are of opinion that the assignment is not well taken, and that every feature of the contention thereby raised is completely met and refuted by this court in *Blow* v. *Maynard,* 2 Leigh, 29. Delivering the opinion of the court in that case, Carr, J., says: "I should pronounce this settlement, then, fraudulent as to existing creditors upon these grounds, if there were none other: 1st, That there is no contract proved; 2d, That if a contract, it is a parol contract for land; 3d, That there is such a lapse of time between the alleged contract and the settlement, and such a discrepancy in their terms, that the latter cannot be presumed to be in execution of the former."

Such was the doctrine held in *Blow* v. *Maynard,* a case strikingly like the case here under consideration, and the same doctrine has been uniformly adhered to in the decisions of this court subsequent thereto.

Mrs. Perry, in 1871, joined with her husband, Joseph Perry, in conveying her land—she being examined privily and apart from her husband, as required by the statute in such cases—and there being in the deed, in which she thus joined, no intimation that she executed it on her part in consideration of any agreement for or settlement then or thereafter to be made upon her by her husband. Moreover, by deed dated 12th of August, 1873, said Lemuel Allen and wife conveyed the same land to

J. W. R. Moore and Joseph Perry for a valuable consideration; and by deed dated 23d day of January, 1874, said J. W. R. Moore and wife, and said Joseph Perry and Adeline L., his wife, conveyed the same to James M. Bradford; and by deed dated the 16th day of November, 1874, the said James M. Bradford and wife conveyed to said Joseph Perry and J. W. R. Moore all their right and interest in and title to the property known as Orkney Springs, real and personal, as theretofore owned and possessed by the then late firm of Bradford & Coots, and afterwards by the firm of Bradford, Moore & Perry, and also other properties and interests mentioned, which need not be here particularly referred to. The consideration mentioned in this deed is, among other things, the grant to the said J. M. Bradford and his heirs, by the said Joseph Perry and Adeline L., his wife, and J. W. R. Moore and Henrietta, his wife, by said deed of January 23, 1884, of two parcels of land therein described, being the same land allotted to said Adeline L. Perry in the division of the lands of her father, William Sigler, and the same in the conveyance of which she joined with her husband, the said Joseph Perry, in the deed of August 20, 1873, to Lemuel Allen.

Thus we see that Mrs. Perry twice joined with her husband in conveying the land inherited by her from her father—first in the deed to Lemuel Allen, who afterwards conveyed it to her husband and J. W. R. Moore, and then in the deed from the latter to J. M. Bradford. And then we see that by the deed of November 16th, 1874, Bradford conveyed to her husband and said Moore other property in consideration mainly of the land thus conveyed to him. All these deeds were duly acknowledged and admitted to record, and in neither of them is there any mention or intimation even of any settlement to be made upon Mrs. Perry by her husband in consideration of said conveyances by her, or either of them. Yet, going back of the

conveyance of 23d of January, 1874, in which she joined, Mrs. Perry, in her answer, attempts to set up a parol agreement between herself and husband, entered into, as it is claimed, at the time she joined with him in the conveyance of her land to Lemuel Allen, by the deed of December 1st, 1871, to the effect as set forth in the deed of December 2d, 1880. The question recurs, was there any such contract? If there was, the burden of proof was on the defendants to prove the contract. *Blow* v. *Maynard, supra; William and Mary College* v. *Powel and als.,* 12 Gratt. 372; *Price* v. *Thrash,* 30 Gratt. 533; *Hatcher* v. *Crews,* 78 Va. 465.

Let us then enquire—1st. Was there a contract proved such as that contained in the recital of the deed of December 2d, 1880, and as set up in the answers? The witnesses relied on to prove the contract are A. M. F. Moore, N. M. Goudy, Wm. Tysinger and Adeline L. Perry, the wife herself. As to Mrs. Perry, she was clearly an incompetent witness. *William and Mary College* v. *Powel, supra; Murphy* v. *Carter,* 23 Gratt. 486; *Burton* v. *Mill,* 78 Va. 468. But, if Mrs. Perry had been a competent witness, her testimony proves nothing; and the same is true of the other witnesses named above. Two witnesses, Tysinger and Mrs. Perry, prove, not an agreement between Joseph Perry and Adeline L., his wife, at the time the latter joined with her husband, in 1871, in the sale and conveyance of her land to Lemuel Allen, but loose and vague conversations between the husband and wife, to the effect that Joseph Perry *proposed* that. if his wife would join in the conveyance of her real estate, he would secure to her a home in lieu thereof. As to the other two witnesses relied on, A. M. F. Moore and N. M. Goudy, they proved absolutely nothing to the purpose.

2d. If there was a contract between Joseph Perry and his wife, as alleged, it was a parol contract for land; and it is impossible to regard the conversations, testified to by the wit-

ness above referred to, as evidence of a contract without an utter disregard of the policy and letter of the statute of frauds. Carr, J., in *Blow* v. *Maynard, supra.*

3d. The lapse of time between the alleged contract and the settlement was such that the latter cannot be presumed to be in execution of the former. In *Blow* v. *Maynard, supra,* the deed from husband and wife, conveying the maiden land of the wife, was executed in December, 1801; and the deed of settlement from the husband to a trustee for his wife and children was executed in October, 1807, nearly six years after. In the case here under consideration the deed from Perry and wife conveying the maiden land of the wife to Samuel Allen was executed December 1, 1871; and the deed from Joseph Perry to Adeline L. Perry, the wife, was executed a little over nine years thereafter—to-wit, on the 2d day of December, 1880. In this connection the language of Carr, J., in *Blow* v. *Maynard* is appropriate. He says: "We have seen from some of the cases I have cited that if the deeds had been made the same day, or about the same time, so as to afford a fair presumption that they were parts of the same transaction, the court might have so presumed; but the lapse of six years takes away all ground for such presumption; and the case must stand (as indeed it was placed in the argument) upon the footing of express and positive contract."

The case in hand is readily distinguishable from the case of *William and Mary College* v. *Powell* in which the *post-nuptial* settlement was, to a certain extent, held good. In that case the circumstances were such that the agreement was regarded and treated as contemporaneous with the settlement itself. The settlement upon its face purported to be in consideration of the wife surrendering her interests in certain lands; and accordingly she conveyed her estate in that land after the settlement by her husband upon her was executed and admit-

ted to record.   Thus presenting a very different case from the one in hand, in which the relinquishment of the wife's interest is first made, and a subsequent settlement, made nine years afterwards, is sought to be set up and held valid against the claims of existing creditors, and under circumstances which, to say the least, call for direct proof of the alleged previous agreement.   *William and Mary College* v. *Powell, supra.*

The necessity for such proof is made apparent when we look to the long period of time which elapsed between Mrs. Perry's relinquishment and the settlement, and the numerous transactions that Joseph Perry, the husband, had in connection with real estate conveyances from the time of the conveyance of his wife's land in 1871, to the time of the deed of settlement of December 2, 1880, as evidenced by the deeds already referred to; in none of which is there a hint even of a settlement to be made on his wife.

Much reliance is placed by the appellants upon the terms of agreement recited in the deed of settlement, and it is insisted that such such contract was fully executed by the deed of December 2, 1880, and is good against the creditors of the settler.   This insistence cannot be upheld.

In *William and Mary College* v. *Powell*, delivering the opinion of the court, Lee, J., said: "But the recitals in a *post-nuptial* settlement as to the consideration, though admissible as against a person claiming under the settler, are not evidence against a creditor by whom the fairness and validity of the deed are assailed.   Nor are declarations of the wife at the time of executing a deed, or at other times, that it was executed in consideration of a promise of the husband to make a settlement upon her, or because he had made such a settlement, sufficient evidence of a contract to support such a settlement, if made, even to the extent of a reasonable compensation for a right of dower relinquished by her."   Citing *Blow* v.

*Maynard, supra,* and *Lewis* v. *Caperton,* 8 Gratt. 148. See, also, *Price* v. *Thrash,* 30 Gratt. 523; *Campbell* v. *Bowles' Adm'r, Id.* 663; *Fink, Bro. & Co.* v. *Denny,* 75 Va. 668, and *Hatcher* v. *Crews,* 78 Va. 465.

Discussing the subject of *post-nuptial* settlements in the light of the English doctrine upon the subject, it is said in Schouler's Domestic Relations, section 186 (third edition): "The statute of 13 Eliz., chapter 5, is generally recognized throughout the United States; in some cases having been formally re-enacted, in others, claimed to be a part of the common law transported hither by the first settlers; and hence gifts of goods and chattels, as well as voluntary conveyances of lands, by writing or otherwise, are void when made with intent to delay, hinder, and defraud creditors, even though the gift or conveyance be to wife and children. For it is a maxim, both at the civil and common law, that the claims of justice shall precede those of affection." And in *Lloyd* v. *Fulton,* 91 U. S. 479, Mr. Justice Swayne observed: "Fraud is always a question of fact with reference to the intention of the grantor. Where there is no fraud there is no infirmity in the deed. Every case depends upon its circumstances, and is to be carefully scrutinized." And by the same court it has been held that transfers to the wife of an insolvent debtor, and even purchases by her, are justly regarded with suspicion, and consideration from her separate estate must be established by affirmative proof. *Seitz* v. *Mitchell,* 94 U. S. 580; *Kehr v. Smith,* 20 Wall. 31. Nor is it necessary, in order to impeach the transaction as fraudulent and void, that the wife should have had knowledge of and participated in the fraud. For in *William and Mary College* v. *Powell, supra,* it was said by Lee, J.: "It would be a sufficient answer to the charge of fraud on the part of Powell and wife in executing the deed of set-tlement, to say, that if there were fraud, and she participated

in it, still it will not be imputed to her by reason of her coverture." Citing *Blanton* v. *Taylor*, Gilm. 209; *Taylor* v. *Moore*, 2 Rand. 563–580. In the leading American case on this subject (*Reade* v. *Livingston*, 5 Johns Chry. 481), Chancellor Kent ruled that if a settlement after marriage be set aside by the prior creditors, subsequent creditors are entitled to come in and be paid out of the proceeds of the settled estate. The same doctrine was held by this court in *Hatcher* v. *Crews*. Hence, as the conveyance from Joseph Perry to his wife was a *post-nuptial* settlement, under the settled doctrine of this court, it is presumed to be voluntary and void as to creditors, and it is encumbent upon the appellants to show, not only that it was made for a valuable consideration, as attempted to be set up in the answers and by the testimony in support thereof, which answers, the bill charging it to be voluntary, ·cannot remove that presumption, nor be accepted as evidence for the respondents; but the defence set up in the answers must be established by proof. That the defendants below—the appellants here—utterly failed to establish such defence has been already shown. Therefore, in view of all the circumstances, and the settlement by Joseph Perry upon his wife of December 2, 1880, having been made when he was heavily indebted to the several appellees, and as it would seem, insolvent, must be treated and held to be voluntary, fraudulent, and void as to creditors.

The remaining assignments of error may be very briefly disposed of. The second and third assignments will be considered together, and as to them it is only necessary to say that, by reference to the decree appealed from, it will be seen that the application of payments complained of in the second and third exceptions of the defendants below, were so corrected in the master's report as to conform to the views of the exceptors, the appellants here.

The fourth and fifth assignments are in respect to the pro-

ceedings by foreign attachment. It needs only to be said in respect thereto, that while the attachments were sued out, no effort was made to sustain them, and that feature of the litigation was abandoned when the defendants appeared and answered, not only denying the allegation of non-residence, but contesting and making defence to the main object of the several bills. And although the attachments may have been improperly sued out, yet, the object being to set aside the deed of settlement as fraudulent and void, as to which the court properly took jurisdiction, and the defendants having appeared and made their defence, the court rightly proceeded to give relief according to the principles of equity. 1 Bart. Ch. Pr. 583; *O'Brien* v. *Stephens*, 11 Gratt. 610; *Fisher & Bro.* v. *March*, 26 Gratt. 765.

The sixth assignment is that the court below erred in subjecting the lands of Mrs. Perry without first exhausting all the estate of Joseph Perry; the contention being that said Perry owned an interest in Orkney Springs, and had other real and personal estate. This matter is put at rest by the answer of Joseph Perry and wife, in which they specifically deny the allegation in the bill that Joseph Perry had real estate in the county of Shenandoah, either in the Orkney Springs or any of the property conveyed by him to his wife. It is true that Joseph Perry, in general terms, denied that he was insolvent, but he fails to show that he owned any property of any description after the settlement by him on his wife; and the only fair conclusion to be drawn from the facts disclosed by the record is that, by said deeds of settlement of December, 1880, he stripped himself of every atom of property. There are still other assignments of error, but there is nothing in them.

In any and every view of the case, we are of opinion that the decree appealed from is clearly right, and the same must be affirmed.

DECREE AFFIRMED.