# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## BEECHER ET AL. v. WILSON, BURNS & CO.

### APRIL 26th, 1888.

### Absent, Richardson, J.

1. POST–NUPTIAL SETTLEMENTS—*Consideration—Agreement.*—The fact that husband used wife's money to pay on land conveyed to himself, is not sufficient to support a settlement upon her in the absence of a cotemporaneous agreement to that effect; and if the agreement be for the settlement of land on her, it must be in writing. *Perry* v. *Ruby*, 81 Va., 317.

2. IDEM—*Case at bar.*—Husband, heavily indebted, conveyed his land to his wife's separate use, reciting the settlement to be in consideration of his indebtedness to her on account of her money used by him in paying for said land and otherwise. There was at the time of its use, no distinct agreement, written or parol, that said money should be applied to the deferred payments of said land, which was conveyed to himself, and afterwards treated as his own property, or that the use of said money should be regarded as *a debt* from him to her:

HELD:

> Such post-nuptial settlement must be annulled as fraudulent as to his creditors.

3. RESULTING TRUSTS.—A resulting trust must arise at the time of the execution of the conveyance. Payment of the purchase money at the time of the purchase is indispensable. A subsequent payment will not by relation attach a trust to the original purchase. *Miller* v. *Blose* 30 ·Gratt., 744.

4. HUSBAND AND WIFE—*Use of wife's money—Presumption.*—When wife's money comes into husband's hands, and is used in his business as his own, and to purchase property in his own name, and to hold, use, and trade it, and contract debts on faith of his recorded legal title, the presumption is that it is his own property, and she cannot after years have passed, claim it as hers. *Humes* v. *Scruggs*, 94 U. S., 22.

Appeal from decree of circuit court of King William county, rendered October 8th, 1886, in the cause wherein the appellees, Wilson, Burns & Co. and others are complainants, and the appellants, O. Beecher, Jr., trustee, O. Beecher and Angelina Beecher, his wife, are the defendants.    Opinion states the case.

*Geo. P. Haw* and *H. R. Pollard*, for the appellants.

*Thos. P. Bagby* and *Henley & Peachy*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

On the 21st day of April, 1885, O. Beecher was the owner of a valuable farm in King William county, Virginia, called "Riverside," containing three hundred and ninety-eight acres, which was conveyed to him April 17th, 1879, for the purchase-price of $6,870; which farm was well stocked, and upon which the said Beecher erected a valuable dwelling and other improvements.    At that time the said O. Beecher was heavily indebted; and on the said 21st day of April, 1885, he conveyed three hundred and fifty acres of the said farm, and all his personal property thereon, including the stock and crops, to his son, O. Beecher, Jr., as trustee, for the separate use of his wife, Angelina Beecher.

On the 4th day of January, 1886, the bill in this cause was filed, charging that the said deed of settlement was without valuable consideration, fraudulent and void and made with intent to hinder, delay, and defraud creditors, and praying that the said deed be vacated and set aside, and the land settled thereby be sold, and the proceeds applied to the payment of complainants' debts.

The defendants, O. Beecher and Angelina Beecher, his wife, and O. Beecher, Jr., trustee, answered the bill, and denied the allegation of fraud, and averred that the deed was made for a valuable consideration and with *bona fide* intent, in considera-

tion of the money of the wife, Angelina Beecher, having
been, at various times and ways, set forth in the answer,
received, appropriated, and applied by the said O. Beecher to
the payment of the purchase-money for the "Riverside" farm,
to the aggregate amount of $5,900, upon a cotemporaneous
agreement that she should be properly secured therefor.    Depo-
sitions were taken; and, at the hearing of the cause, the court
held the deed of settlement to be without valuable considera-
tion and made with intent to hinder, delay, and defraud credi-
tors, and therefore fraudulent and void; and from the decree
to this effect this appeal is taken.

The deed of settlement of April 21st, 1885, which is attacked
by creditors whose debts or claims, against the husband and
settler, antedated the deed and are admittedly just, is, in date,
in form, in fact, and in every characteristic feature, a post-
nuptial settlement; a conveyance by a husband—heavily in-
debted—of all his property, for the benefit of his wife, which
expresses on its face "free of all debts made by himself"; and
the value of the property conveyed, is far in excess of what is
alleged, but not proven, to be due to the wife.    Under the
repeated early and late decisions of this court, the settlement
is, *prima facie,* fraudulent and void as to existing creditors, and
presumed to be voluntary, unless those claiming under it can
show that it was made for a valuable consideration, in good
faith, and upon a contract or agreement coeval, or so nearly
coeval, with the appropriation and the settlement as to support
the presumption of fair dealing, and to repel the presumption
of law, that the settlement is a mere resort or contrivance for
putting the property of the husband beyond the reach of his
creditors.    *Blow* v. *Maynard,* 2 Leigh, 30; *Fink, Brother & Co.*
v. *Denny,* 75 Va., 663; *Hatcher* v. *Crews,* 78 Va., 463; *Perry* v.
*Ruby,* 81 Va., 317 and 321; and *Robbins* v. *Armstrong, Cator &
Co., ante,* p. 810.

The record shows that Beecher purchased the "Riverside"
farm by deed April 17th, 1879, which makes no allusion to, or

recognition of, the wife, or of her having any claim or separate estate; that he took the title in his own name; that he used it as his own exclusive and absolute property; that he sold and conveyed parts of it; and twice conveyed the whole of it by deeds of trust to secure his debts contracted upon the faith of it; and that he took the releases to himself; that he held it and used it, and obtained credit upon it as his own for over six years, without ever a suggestion of his wife's interest, until, by deed April 21, 1885, (when he had become heavily indebted) he settles it and all his other property upon his wife, to the exclusion of his creditors—upon the recital in the said deed of settlement (the first intimation)—that he had received and appropriated money belonging to his wife at various times previously—part in 1875 and part in 1883, and the other parts at different times. Some of which went to the support of the family, some into his partnership business, and some was used to make the last payments of the purchase-money for the "Riverside" farm, and for improvements put thereon; but there is no adequate proof, if, indeed, there be any whatever, of a contract to repay these moneys. No such contract appears anywhere in the deeds touching this land between the parties; and the only suggestion in the evidence of any such contract, or any contract at all, is in the deposition of the trustee, O. Beecher, Jr., "that there was no understanding at the time they were made directly to her, but it was always agreed that the property should be hers; this was the understanding at the time of the purchase, though *nothing was said about it.*"

Proof of such a contract must be distinct, full and conclusive, to support the settlement; and there is not even a claim or assertion anywhere in the record, that the alleged contract or agreement was in writing. The witness, O. Beecher, Jr., trustee, is seriously impugned, by evidence in the record, for want of veracity; but taking his incomprehensible statement, above quoted, for true, it not only falls far short of proving a

specific agreement, at the time, that the Riverside farm purchased, should be the property of the wife; but it cannot be construed into a binding contract, as testified to by this witness, in regard to land, without an utter disregard of the policy and the letter of the statute of frauds. (*Blow* v. *Maynard,* 2 Leigh.) By the evidence of appellant's own witnesses, and their own pleadings, Mrs. Beecher permitted her money to go into the hands of her husband, O. Beecher, and be used in his business, and be mixed with his property, and to be applied to the purchase of land in his own name, and to be held and used to give him credit and advantage in his business, for a series of years; and, by so doing, it became his own property and liable for his debts. (*Kesner* v. *Trigg,* 8 Otto, 50; *Humes* v. *Scruggs,* 94 U. S., 27.) Having constantly consented that he should hold himself out to the world as the absolute owner of this property, and to contract debts on the credit of it, up to the very hour of his insolvency, it would be against the plainest principles of justice and good conscience, and utterly subversive of fair dealing, to permit the wife to step in, at the last moment and after many years, with an unsupported and mere assertion of ownership of the property which she had permitted him to hold and proclaim as his absolute own, all the time, and obtain and enjoy credit and business standing thereby, and thus to defraud the just debts due to his honest creditors. When the trust does not arise upon the face of the deed, but is raised upon the subsequent payments of purchase-money to override the deed, the proof must be very clear, and mere parol evidence ought to be received with great caution. (*Bank of the United States* v. *Carrington,* 7 Leigh, 581.)

And if every word as testified to by the witnesses for appellants, be true, as to the sums of money belonging to Mrs. Beecher alleged to have been paid by her husband upon the purchase of the Riverside farm, this would not support a resulting trust. The trust must be coeval with the deed, or it cannot exist. "A resulting trust must arise at the time of the

execution of the conveyance. A subsequent payment will not, by relation, attach a trust to the orignal purchaser." *Miller* v. *Blose*, 30 Gratt., 744. In Bispham's Principles of Equity, 122, it is said, "it is essential to a resulting trust that the money should be paid at the time of the purchase. A subsequent payment cannot raise a trust."

In Bigelow on Fraud, 109, it is said, "after the legal title has been conveyed to one who agreed to buy for another, the application of the latter's money to pay notes for the purchase-money, creates no resulting trust in favor of the other. The trust must attach, if ever, at the time of the conveyance" &c.

The simple fact, that the husband used the wife's money, as alleged, is not a sufficient consideration to support the deed of settlement in the absence of proof that, at the time and times the various sums of money were received from the wife, it was understood to be *loaned;* and that, then and subsequently, both husband and wife recognized it as a *debt,* and intended to stand to each other in the relation of debtor and creditor. (Bump on Fraudulent Conveyances, 304; *William and Mary College* v. *Powell,* 12 Gratt., 372; *Blow* v. *Maynard,* 2 Leigh, 30; *Campbell* v. *Bowles,* 30 Gratt., 663.)

There is no pretence of such proof in this record; and, in fact, it appears throughout the whole matter, that this money was used by the husband, by common consent, as his own, and never was thought of as a debt from him to his wife, till subsequent events made it necessary to hide his property from his creditors. The presumption is, that when a wife's money comes into the hands of her husband and is used by him in his business as his own, and to purchase property in his own name, and hold it and use it and trade with the property so bought and held in his own name, and contract debts upon the faith and credit of his recorded legal title, it is his own property, and she cannot, after years have passed, claim it as her own, and thus enable her husband to consummate a fraud upon his creditors. (94 U. S., 22.) The presumption is, that she

intended to *give*, and not to *loan*, the money, even if (as in this case there is not) there be any proof that the moneys did not belong to the husband by his marital right, and that she held any separate estate. (2 Minor, 192; 30 Gratt., 744; 32 Gratt., 411.)

The married woman's act secured to married women property " *hereafter acquired* "—that is, after April 4th, 1877; and all the money appropriated by the husband in this case, was acquired by the wife long prior to April 4th, 1877, in 1863 and 1875; and the married woman's act does not prevent a wife from giving her property to her husband if she please, nor does it abrogate the presumption that, under circumstances such as obtained in this case, she has done so. (76 Va., 374.) The decree complained of is plainly right, and we are of opinion that it must be affirmed.

DECREE AFFIRMED.