# Staunton.

## KEAGY AND ALS. V. TROUT AND ALS.

### September 20th, 1888.

1. FRAUDULENT CONVEYANCES—*Presumption—Terms—Time upon paying interest.*—Fraud cannot be presumed unless terms exclude other inference. Privilege of longer time and possession, not exceeding five years, upon paying interest, does not affect validity. *Sipe* v. *Earman*, 26 Gratt. 563. Nor will the fact that creditors may be hindered and delayed in absence of fraudulent intent. *Young* v. *Willis*, 82 Va. 291.

2. ISSUE OUT OF CHANCERY—*Denial—Evidence* —Issue will not be directed merely because evidence is contradictory, if chancellor's conscience be satisfied, and never where answer denies the allegations of the bill and there is no evidence to support them. *Carter* v. *Carter*, 82 Va. 624.

3. USURY—*Jury—Discovery.*—Code 1873, ch. 137, § 12, directing the court to cause an issue to be made and tried at its bar by a jury, whether or no the transaction be usurious, had no application to a bill requiring a discovery.

4. IDEM—*"Brokerage"—Attorney's fees—Case at bar.*—Where one contracts to pay to another a certain sum, called by them "brokerage," to negotiate and guaranty a loan for him, and also to pay attorney's fees for making abstracts of title to the property whereon loan is to be secured, though said sums exceed lawful interest ;

HELD:

They, not being for loan or forbearance of money, do not constitute usury.

5. IDEM—*Corporation—Stockholder—Loanor.*—Nor does the fact that the negotiator and guarantor of the loan is a corporation and that the lender is a stockholder, make such " brokerage," etc., usury.

6. TRUST DEEDS—*Debts—Inaccuracy—Injunction.*—Where answers, responsive to the bill, show debts secured in trust deed to grantor's sons to be valid and subsisting, the validity of the deed is not affected by the fact that it inaccurately describes the amounts of those debts, though, where the amounts are not ascertained, a court of equity will enjoin

sale of trust property until they have been determined. *Muller* v. *Stone,* 84 Va. 834.

7. HUSBAND AND WIFE—*Married woman's act—Distributive share—Separate estate—Case at bar.*—Where wife's distributive share in her father's estate by his death accrued to her in title, but was not reduced by her husband as such into his possession before the passage of the married woman's act (4th April, 1877,) such distributive share became, under said act, her separate estate, and his subsequent application thereof to his own purposes made him her debtor to that amount. *Alexander* v. *Alexander, ante,* p. 353.

8. POST-NUPTIAL SETTLEMENTS—*Wife's relinquishment—Case at bar.*— Where wife relinquishes an interest in husband's estate, and he makes a settlement upon her, both deeds being executed at or about the same time (say at interval of sixteen days), the court will presume the two deeds to be parts of the same transaction, and that the relinquishment was the consideration for the settlement. *Maynard* v. *Blow,* 2 Leigh, 30.

9. IDEM—*Witnesses—Competency.*—In suits where wife is party and interested in the result, husband is not a competent witness.

Appeal from decree of circuit court of Roanoke county, entered at its April term, 1887, in the chancery suit wherein Anne E. Keagy, Mary S. Keagy, and James S. Kent were complainants, and David E. Trout, his wife, Sarah C. Trout, L. C. Hansbrough, trustee, Henry B. Trout, W. W. Brand, W. L. Brand, trustee, S. W. Jameson, trustee, Henry S. Trout, Roanoke Trust, Loan and Safe Deposit Company and others were defendants.

The object of the suit was to set aside five deeds of trust which were executed at various times by the defendant, David E. Trout, and admitted to record in July, 1886. Deed No. 1, which bears date May 25, 1886, and which was delivered and recorded on the 7th day of July, 1886, conveys two tracts of land situate in Roanoke county, in trust, to secure the payment of a debt of $6,000, from the grantor to the Roanoke Trust, Loan and Safe Deposit Company. Deed No. 2, which was executed and recorded on the 7th day of July, 1886, conveys the grantor's interest in the same land in trust, to secure the payment of a debt of $15,000, from the grantor to Henry S. Trout. Both of these debts were evidenced by bond, and in each of the trust deeds the wife of the grantor,

Sarah C. Trout, united. Deed No. 3 conveys the horses, cattle, farming implements, etc., of the grantor to secure the payment of certain debts, among which were three debts due by the grantor to his sons, namely, a debt of $680 for labor, due to Charles B. Trout; a debt of $220 for labor, due to Henry D. Trout, and a debt of $100 for labor, due to Adolphus L. Trout. Deed No. 4 conveys seventeen hundred bushels of wheat and five hundred bushels of corn to secure, among other debts, the payment of a debt to Silas Shelburne of $500; a debt of $500 due to Charles B. Trout, and a debt of $500 due to Adolphus L. Trout—the two last-mentioned creditors being the same who are secured by the third deed above-mentioned. Deed No. 5, the last of the series, bears date July 23, 1886, and was delivered and admitted to record the same day. It conveys the grantor's equity of redemption in the two tracts of land conveyed by deeds Nos. 1 and 2, and a certain house and lot at Union Hall, in Franklin· county, and certain personal property in trust, to secure the payment of sundry debts, which are mentioned in the deed, among which are two debts due by the grantor to his wife, the said Sarah C. Trout; that is to say, a debt of $2,000, which the deed recites came to her as her distributive share of the estate of her father, William Persinger, deceased, since the 4th day of April, 1877, in her own right, and as her separate estate, and which went into the hands of the grantor as the executor of the said William Persinger, deceased; and another debt of $3,000, which the deed recites is due by the grantor to the said Sarah C. Trout in consideration of her relinquishment of her contingent right of dower in the two tracts of land above-mentioned; the deed further reciting that the said Sarah C. Trout united in the deeds Nos. 1 and 2 in consideration of an agreement between herself and husband that he would remunerate and indemnify her to the full extent of her dower interest in the two tracts of land conveyed by those deeds, which was estimated to be worth the sum of $3,000. The deed also secures other creditors of the grantor, among whom are the complainants in

the court below, the female appellants here, whose debts are placed in a deferred class.

The bill charges that the several deeds above-mentioned were executed with intent to hinder, delay and defraud the complainants, who are creditors at large of the grantor, and that the grantees and beneficiaries in the deeds had notice of such fraudulent intent. It also charges that certain of the debts secured are not *bona fide* and valid, and that many of them are usurious; and it calls upon the defendants to answer its allegations on oath, and also to answer on oath certain interrogatories relative to the debts in question, which are propounded in the bill. Subsequently, a petition was filed in the cause by one James S. Kent, also a creditor at large of the grantor, David E. Trout, who united in the allegations and prayer of the bill. The defendants answered, denying the charge of fraud, and detailing, in answer to the interrogatories of the bill, the circumstances attending the transactions in question. Testimony was taken, and, when the cause came on to be heard, the bill and petition were dismissed by the decree complained of. Argued at Wytheville, decided at Staunton.

*Penn & Cocke,* for the appellants.

*G. W. & L. C. Hansbrough,* for appellees, David E. Trout and wife, W. W. Brand, W. L. Brand, trustee, H. B. Trout, and others.

*Griffin & Watts,* and *T. W. Miller,* for appellees, S. W. Jameson, trustee, Henry S. Trout, and Roanoke Trust, Loan and Safe Deposit Company.

*Staples & Logan,* for W. W. Brand.

LEWIS, P. (after stating the case as above reported), delivered the opinion of the court.

We are of opinion that the decree is right. The answers, which are responsive to the bill, deny the charges of fraud, and their denials are conclusive of the point, as there is no evidence in the case to overcome them; and the bill calls upon the defendants to answer under oath. There is nothing on the face of the deeds to warrant the inference of fraud, and, as this court has repeatedly declared, fraud cannot be presumed unless the terms of the instrument attacked preclude any other inference. The provision in deed No. 1, and also in deed No. 2, that the grantor shall have the privilege of extending the time for the payment of the principal sums secured from year to year, for a period not exceeding five years, he in the meantime to remain in possession of the lands, provided the annual interest is punctually paid, does not of itself affect the validity of the deeds, as is shown by numerous decisions of this court in analogous cases. *Lewis* v. *Caperton's Ex'or*, 8 Gratt. 148; *Cochran* v. *Paris*, 11 Id. 348; *Dance* v. *Seaman*, Id. 778; *Sipe* v. *Earman*, 26 Id. 563; *Brockenbrough's Ex'or* v. *Brockenbrough's Adm'r*, 31 Id. 580; 2 Minor, Inst. 604.

"The fact that creditors may be delayed or hindered," said the court in *Dance* v. *Seaman*, "is not of itself sufficient to vacate such a deed, if there is absence of fraudulent intent. Every conveyance to trustees interposes obstacles in the way of the legal remedies of the creditors, and may, to that extent, be said to hinder and delay them." Postponing a sale to an unreasonable time, it was added, may be a circumstance, in connection with other circumstances, tending to prove a fraudulent intent; and, if made with such intent, the time to which the sale is postponed will not affect it. In *Lewis* v. *Caperton's Ex'or*, a deed, executed *bona fide* to secure a debt, was held valid, which was not to be enforced for ten years, and the same doctrine is held in the recent case of *Young* v. *Willis*, 82 Va. 291.

The contention of the appellants that the circuit court ought to have directed an issue to try the question of fraudulent intent in the execution of the deeds, is also untenable. Where

the evidence is conflicting, and the credibility of witnesses is involved, and the chancellor feels the necessity of a trial by jury to satisfy his conscience upon the question of fact before him for determination, it is proper to direct an issue. But he is not bound to direct an issue merely because the evidence is contradictory. He must exercise in the matter a sound discretion, and, if his conscience is satisfied, the expense and delay which a jury trial involves ought not to be incurred, except in particular cases, in which, by statute or practice, it is made a matter of right.

In *Beverly* v. *Walden*, 20 Gratt. 147, it was decided that when the allegations of the bill are positively denied by the answer, and the plaintiff has failed to furnish two witnesses, or one witness and strong corroborating circumstances in support of the bill, it is error in the chancellor to order an issue; that no issue should be ordered until the plaintiff has thrown the burden of proof on the defendant; and that, until the *onus* is shifted, and the case rendered doubtful by the conflicting evidence of the opposing parties, the defendant cannot be deprived, by an order for an issue, of his right to a decision by the court on the case as made by the pleadings and proofs. And in *Harding* v. *Handy*, 11 Wheat. 103, Chief Justice Marshall, speaking for the court, said that there seems to be, ordinarily, no reason for the intervention of a jury to try an issue of fact in a chancery suit, unless the case be one in which the court would be satisfied with the verdict, however it might be found. See, also, Barton Ch. Pr. 816; *McCully* v. *McCully*, 78 Va. 159; *Fishburne* v. *Furguson*, 84 Va. 87, and cases cited.

In the present case the evidence upon the question of fraud is not even conflicting. It is all one way, and that on the side of the defendants, the appellees here. It is true the defendant, David E. Trout, the grantor in the several deeds, was sworn as a witness, and testified that for several of the items charged against him, and secured in the deed, he received no consideration; but his competency as a witness in the case was denied,

and the objection is undoubtedly well founded, as his wife is a party to the suit, and interested in the result. *Perry* v. *Ruby*, 81 Va. 317 ; *Witz* v. *Osburn*, 83 Va. 227.

Nor did the circuit court err in not submitting the question of usury to a jury. As a general rule, the defense of usury is personal to the debtor. Our statute, however, provides that "any judgment creditor who apprehends that he is in danger of loss by reason of usurious dealings on the part of his debtor, may exhibit his bill in equity, verified by affidavit, against the party with whom the dealings were had, and compel him to discover, on oath, all bargains, contracts, or shifts relative to such dealings ; and, if it appear, that more than legal interest has been received, the excess above that rate, or so much thereof as may be necessary, shall be applied to the satisfaction of the plaintiff's demand," etc. Code 1873, ch. 137, § 11. And by the following section it is provided that, "upon a bill requiring no discovery of the defendant, but praying an injunction to prevent the sale of property conveyed to secure the repayment of a sum of money or other thing borrowed at usurious interest, the court shall cause an issue to be made and tried at its bar by a jury, whether or no the transaction be usurious. On the trial of such issue neither the bill nor the answer shall be given in evidence. If the jury find the transaction usurious the same relief shall be given as if the party claiming under the conveyance had resorted to the court to make his claim available. But the court may grant new trials as in other cases.

The appellants contend that, although they are creditors at large, yet they are entitled to the benefit of the provisions of these two sections of the statute, by virtue of the second section of chapter 175 of the same Code, which provides that a creditor, before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, assignment, or transfer of or charge upon the estate of his debtor, which he might institute after obtaining such judgment or decree ; and he may, in such suit, have all the relief in respect to said estate which

he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover. *Wallace's Adm'r* v. *Treakle*, 27 Gratt. 479.

On the other hand, the appellees contend that there is no direct connection between the eleventh and twelfth sections above quoted, and that neither applies to a general creditor. Be that as it may, a sufficient answer to the suggestion that the circuit court ought to have caused the question of usury to be tried by a jury is that the last-mentioned section does not apply to the present case. That section does not apply, under any circumstances, where a discovery is sought; and here a discovery is sought, although the bill is not technically a bill of discovery, or what is called a "pure bill of discovery."

Nor is the charge of usury sustained by the evidence. The item of $1,500, which was paid to the Roanoke Trust, Loan and Safe Deposit Company, and to which the charge of usury chiefly relates, was not paid for the loan or forbearance of money, but for the service of the company in negotiating and guarantying a loan of $15,000, which was effected by the company for the defendant, David E. Trout, and which is secured in the second deed of trust for the benefit of the defendant, Henry S. Trout, by whom the loan was made. The evidence shows that the company contracted to loan, and did loan, of its own funds to the said David E. Trout, the sum of $6,000, which is secured in the first deed of trust, and to negotiate and guaranty, as by its charter it is authorized to do, a further loan of $15,000; that Henry S. Trout refused to make the loan unless the company would guaranty the payment of both the principal and interest, which it did, when the money was paid; and that, when the first year's interest became due, the company was called on to pay it, and did pay it. The evidence also shows that David E. Trout desired to borrow the money for five years, and that the compensation of the company was agreed upon in advance, and that two per centum per annum on the amount of the loan was the sum agreed upon. The amount of the loan was $15,000,

398    KEAGY AND ALS. *v*. TROUT AND ALS.

Opinion.

to run for five years, and hence the sum charged and received by the company was $1,500.

David E. Trout was heavily indebted, and it was agreed that the two loans above-mentioned, aggregating $21,000, should be deposited with the trust company to be by it disbursed in the payment of his debts, which was done. At the time the money was deposited, a written memorandum was filed with the company, containing directions as to how the money should be disbursed; and in that paper, a copy of which is filed with the record, it was directed that, after the payment of certain specified debts, and the expenses of searching title, making abstract of title, drawing deeds of trust, and expenses of this transaction, including brokerage on the $15,000 loan, "the balance should be paid as the said David E. Trout might direct."

It is contended by the appellants that this shows that the $1,500 was paid to the company as brokerage on the loan of $15,000, which is an amount so far in excess of what would be a reasonable charge, it is insisted, as to be evidence of fraud.

What are the customary charges for brokerage in such cases we are not informed ; nor is it material. The evidence shows that the term "brokerage" was inadvertently used when the memorandum was written, and that the charge made was not for brokerage, but, as we have said, for negotiating and guarantying the loan of $15,000 ; and there is no evidence to show, nor is it pretended, that for this service the charge was excessive, much less that it is evidence of fraud.

The claim of the appellants that the charge was a mere shift or contrivance to cover a usurious transaction, is without the support of a *scintilla* of evidence. Both loans bear interest at the stipulated rate of six per centum per annum, and no more. And the fact that Henry S. Trout, by whom the $15,000 loan was made, is a stockholder and director in the trust company— a fact upon which the appellants lay great stress—does not at all affect the case. The company is an artificial person, created by law, with rights and duties altogether separate and distinct

from those of the individuals, who, from time to time, may compose it. They have a separate existence, separate interests, and separate liabilities, and, so far as the right of an individual member of the company to its earnings is concerned, he is entitled only to his proportionate share of the surplus profits ; so that, when in the present case the $1,500 was paid to the company, no part of it was the money of Henry S. Trout. His transaction in loaning the $15,000, and that of the company in negotiating and guarantying the loan, were wholly separate and distinct transactions. Both were *bona fide,* without evasion, or the taint of fraud or suspicion ; and there is no principle upon which the charge of usury can be sustained.

The appellants also object to two items in the settled account between the company and David E. Trout, one of $56, the other of $125, as to which it is only necessary to say that they represent attorney's fees and other expenses in making abstracts of title to the lands conveyed, drawing deeds of trust, etc., which the defendant, David E. Trout, contracted to pay, and as to which no objection was made when the account was settled. In his answer he denies that these were proper charges against him, but his answer cannot be read against his co-defendants ; and, besides, the evidence shows that the charges were proper.

As to the debts in favor of the sons of the grantor, which were secured in two of the deeds above-mentioned, and to which the appellants object, the answers, which are responsive to the interrogatories of the bill, are entirely satisfactory, and show them to be valid and subsisting debts. It need only be added that the validity of a deed of trust executed *bona fide* is not affected by the fact that the amount of the debt secured is not described with accuracy, though where the amount is not ascertained a court of equity will enjoin a sale until the true amount can be determined. 1 Jones, Mortg. § 343 ; *Lane* v. *Tidball,* Gilmer, 130 ; *Muller* v. *Stone,* 84 Va. 834 ; *Griffin* v. *Macaulay,* 7 Gratt. 476.

This brings us to the consideration of the two debts which

are secured in the fifth and last deed of trust in favor of Mrs. Trout, the wife of the grantor.

(1.) As to the first of these debts, it appears that William Persinger, the father of Mrs. Trout, died about the year 1876, and that she was one of his distributees. Her husband was the executor of the estate. The first settlement of the executor was made August 30, 1877; and from that settlement it appears that there was due Mrs. Trout the sum of $395.01, as of April 30, 1877, which was after the passage of the statute commonly known as the "married woman's act." The last settlement, which was made December 1, 1886, shows a balance due Mrs. Trout of $1,673.73 as of March 1, 1882, which was credited to the executor as of that date, there being an entry to the effect that it had been retained by him. The appellants contend that, upon the death of the wife's father, her husband had the right to reduce her distributive share in the estate into possession as any other of her *choses in action,* and that this right was not affected, and could not be affected, by the subsequent passage of the act above mentioned. In the latter branch of this proposition we do not concur. Indeed, in the recent case of *Alexander* v. *Alexander*, *ante,* p. 353 (decided at the last term at Wytheville), the contrary was expressly held, in a unanimous and well-considered opinion delivered by Judge Hinton. And upon the facts just adverted to, we are of opinion that the debt secured in favor of the wife is a valid one. The right of her husband to reduce her distributive share into possession had not been exercised before it was taken away by the statute, which made her interest in the estate her separate property, and hence the money, when collected, was hers absolutely. Besides, it was not collected by the husband, as such, but in his capacity as executor; and at common law the husband, to be absolutely entitled to the wife's *choses in action,* must have reduced them into possession as husband, and not in any other capacity, as executor, administrator or trustee. Tyler, Inf. § 375, and cases cited.

(2.) We are also of opinion that the settlement upon the wife

in consideration of her relinquishment of her contingent right of dower is valid. It is true, the only evidence in support of it are the recitals of the deed of settlement and the answers of defendants, David E. Trout and wife; and these, the appellants contend, are not sufficient, relying upon *Blow* v. *Maynard,* 2 Leigh, 30, and other cases of that class. The doctrine of those cases undoubtedly is, that a post-nuptial settlement, where the settler is indebted, is presumed to be voluntary; and, when assailed by creditors, the burden is upon those claiming under it to show by proof, independent of their own answers, where no discovery is sought, that it is founded upon valuable consideration. *Fink* v. *Denny,* 75 Va. 663; *Hatcher* v. *Crews,* 78 Id. 460; *Perry* v. *Ruby,* 81 Id. 317; *Rixey's Adm'r* v. *Deitrick, ante,* 42.

But there is another principle, or rather a qualification of the rule, which was recognized in *Blow* v. *Maynard,* and that is this: that where the wife relinquishes an interest in her husband's estate in consideration of a settlement upon her, and the deed of relinquishment and the deed of settlement are contemporaneous, or made about the same time, so that it may be reasonably presumed that the two deeds are parts of the same transaction, the court will so presume, and will look upon the relinquishment as the consideration which produced the settlement. See also *William and Mary College* v. *Powell,* 12 Gratt. 372.

The present case comes within this principle. Here the two deeds of relinquishment and the deed of settlement, if not delivered at the same time, were delivered about the same time, the interval between them being only sixteen days; and the circumstances under which they were respectively executed not only render the presumption reasonable, but lead irresistibly to the conclusion that they were virtually parts of the same transaction, and that the last-mentioned deed recites the true consideration upon which it is founded. The evidence shows that when the deeds were executed, the grantor was indebted in a sum exceeding the value of his whole estate, and that for some time prior to that time he was endeavoring to borrow money with

which to pay his debts. An effort was made by the trust company to effect a loan for him in Philadelphia, but the effort failed, because the title to his land was not deemed satisfactory; and the fair inference from the record is that a condition of the two loans, which were ultimately effected, was that the wife should unite in conveying the Roanoke land to secure them. It was as much his duty to provide for his wife as for his creditors; and the presumption is that, upon the faith of his promise to do so, she united in the trust deeds Nos. 1 and 2.

In *Blow* v. *Maynard*, the settlement was not made until after the lapse of six years from the date of the alleged agreement. In *Perry* v. *Ruby* it was nine years. In *Hatcher* v. *Crews* it affirmatively appeared that there was no consideration for the settlement at all. And so it may be said of every case in which this court has refused to sustain the settlement, that the circumstances widely differ from those of the case in hand. It is not pretended that the settlement upon Mrs. Trout, if valid at all, is excessive, and the decree upholding it and dismissing the bill must therefore be affirmed.

DECREE AFFIRMED.