GEORGIA RAILROAD & BANKING CO. *v.* PENDLETON *et al.*

1. If not in all cases whatsoever, certainly in any case admitting of doubt, the question of rendering a judgment by the superior court without a jury is one not involving jurisdiction, but the proper exercise of jurisdiction, and the improper decision of it is mere error and will not render the judgment void.

2. A joint action against the maker and indorsers of a promissory note is a civil case founded on an unconditional contract in writing; and where no issuable defence is filed under oath or affirmation, the court may render judgment thereon against all of the defendants without the verdict of a jury.

3. Where the maker of a promissory note executes a mortgage to secure the same, and in the mortgage stipulates for the payment of all expenses of collection, including ten per cent. attorneys' fees, and declares as a part of the mortgage deed that it may be foreclosed for such expenses and attorneys' fees, together with the principal and interest of the note, and a judgment of foreclosure is afterwards rendered accordingly, and judgment upon the note against the maker and indorsers is also rendered in a proper action, and afterwards the indorsers waive in writing any objection to the stipulation in the mortgage as to attorneys' fees, such waiver is a ratification by them of the maker's act in giving the mortgage, and they cannot afterwards insist that the judgment of foreclosure shall not operate against them as conclusive upon the question of the creditor's right to appropriate a sufficient amount of the proceeds of the mortgaged property to the payment of such fees.

4. One of the indorsers being the president of the corporation which executed the mortgage, and he signing the same as president, his assent to the stipulation as to attorneys' fees was given thereby, and no further waiver as to him was necessary.

October 19, 1891.

Judgments. Jurisdiction. Actions. Practice. Mortgages. Waiver. Ratification. Attorneys' fees. Cor-

porations. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1891.

Reported in the decision.

J. B. CUMMING and HILLYER & BROTHER, for plaintiff.

J. L. HOPKINS & SON, A. H. COX and ROSSER & CARTER, for defendants.

LUMPKIN, Justice.

The Pendleton Guano Company, a corporation, desiring to borrow money from the Georgia Railroad & Banking Company, executed, by its president W. M. Pendleton, and its treasurer E. A. Werner, a promissory note for twenty thousand dollars, payable to the order of Chas. G. Goodrich, cashier, at the Gate City National Bank, Atlanta, Ga. The note was not indorsed by the payee, but was indorsed by W. M. Pendleton, C. K. Maddox and others, all of whom were stockholders, and most of them directors, of the corporation, they simply signing their names across the back of the note. All this was done before the note was delivered to the banking company, which advanced the money upon it as above executed and indorsed. This note did not contain any stipulation for attorneys' fees, but on the day of its execution, the corporation, by its said president and treasurer, made a mortgage upon realty and personalty in favor of Goodrich, cashier, to secure said note, and the mortgage contained a stipulation that in case said note was not paid at maturity, it might be foreclosed for principal, interest, and the costs and expenses of collection, including ten per cent. attorneys' fees. Afterwards suit was brought on the note, judgment was rendered thereon by the court without the intervention of a jury, and the mortgage was foreclosed for principal, interest, cost, and ten per cent. attorneys' fees. The mortgage *fi. fa.* having been levied on the mortgaged property, the guano company was seeking,

by equitable proceedings, to enjoin the sale under this levy, when an agreement was entered into between the plaintiff and the indorsers, who were interested in the corporation, and controlled its affairs, by the terms of which the sale was postponed until the following January, and the indorsers agreed to offer no further delay or obstacle to the sale, and also to make no resistance as to attorneys' fees. This agreement was signed by all the indorsers except Pendleton, who, it will be remembered, was the president of the corporation. When the property of the corporation was sold under this *fi. fa.*, a portion of the proceeds was appropriated to the payment of the attorneys' fees mentioned in the judgment of foreclosure. After all this was done, the *fi. fa.* issued from the common law judgment was levied on property of the defendant indorsers, and they filed severally their affidavits of illegality.

1–2. One of the grounds of the illegality was that the judgment was void as to these indorsers, for the reason, as alleged, that it was rendered by the court without the intervention of a jury upon a contract which was not unconditional, the contention being that such indorsers were only liable *on condition* the note was duly presented to the principal at maturity, dishonored, and such fact duly notified to the indorsers. This contention assumes that the persons mentioned as indorsers were liable only as such and not otherwise. Under the facts above recited, it would not, perhaps, be going too far to hold that these persons were not, in a strict sense, indorsers, but were really sureties, and liable as makers. It is unnecessary, however, to thus rule in this case. At best, the question whether or not the court should, without a jury, render judgment on this paper was not free from doubt; and when a judgment upon such a paper is asked of the court, it may resolve the doubt by judicially determining whether it is a case requiring the

v 87-48

verdict of a jury or not.   As stated in the first head-
note, we do not think the determination of this question
is one involving the jurisdiction of the court, but rather,
how the court shall exercise the jurisdiction it undoubt-
edly has both of the persons and subject-matter before
it, and the incorrect determination of the question
would be simply an error which defendants should en-
deavor to prevent at the time of its commission, or at
least seek to have the same corrected by a proper mo-
tion during the term when such error was made.   We
do not mean to hold that if suit was brought upon a
written contract which plainly and beyond all question
was not unconditional, a judgment by the court with-
out a jury would be valid; but we do mean to say
that in a case where it is doubtful whether there should
be a verdict or a judgment without a verdict, and the
court adjudicates that a jury is not necessary, and ren-
ders judgment accordingly, such judgment will not be
absolutely void.   If erroneously rendered, the error may
be corrected as above indicated, but the judgment will
not be open to attack by illegality after the expiration
of the term at which it was rendered, especially when
defendants have by their conduct acquiesced in its va-
lidity.   The constitution provides that " The court shall
render judgment without the verdict of a jury, in all
civil cases founded on unconditional contracts in writ-
ing, where an issuable defence is not filed under oath
or affirmation."   So far as the maker is concerned, this
note is undoubtedly an unconditional contract in writ-
ing; and even if the persons described as indorsers are
liable only as such, still they may be sued in the same
action with the principal.   When such a suit is brought,
in determining whether or not the services of a jury are
needed, the action must be classified, and the question
must be settled whether it is or is not "founded on an
unconditional contract in writing."   Otherwise, the curi-

ous result might follow that as to one of the defendants there should be a judgment of the court without a jury, and as to others there must be a verdict and judgment, —all in the same case.   Our constitution and laws do not contemplate any such procedure as this, and therefore, in a case like the present, the same sort of judgment should be rendered against all of the defendants.   In our opinion, there is no variance either from truth or sound principle in classifying this case as one *founded upon* an unconditional contract in writing, and the court properly rendered its judgment against all of the defendants without a jury.

3–4. Other grounds of the affidavits of illegality made the point that if the money arising from the sale of the guano company's property under the mortgage *fi. fa.* which was appropriated to the payment of attorneys' fees had been applied to the common law *fi. fa.*, such application, in connection with other credits thereon, would have satisfied the latter *fi. fa.*, and therefore, so far as affiants are concerned, it has been paid.   Granting all this to be true, a complete answer to it is, that all these defendants, except W. M. Pendleton, expressly agreed in writing to make no resistance to the collection of these attorneys' fees ; and Mr. Pendleton, as president of the corporation, signed the mortgage agreeing to pay attorneys' fees without objection to that stipulation therein, and without giving any notice to plaintiff that he would claim any exemption from liability in consequence of these fees being collected out of the proceeds of the mortgaged property.   Hence we rule, in effect, in the 3d and 4th head-notes, that these indorsers waived all objections to the plaintiff's applying a sufficiency of the proceeds of the mortgaged property to the payment of these fees, and they are bound by such waivers.                    *Judgment reversed.*