## MANNING *v.* WEYMAN.

99   57<br>111  666

1. Under the act of September 29th, 1879 (Acts of 1878-9, p. 149), as amended by the act of December 24th, 1886 (Acts of 1886, p. 34), the judge of the superior court of the Stone Mountain circuit, when presiding in the criminal section or branch of the superior court of Fulton county, has jurisdiction to render a judgment against the sureties upon a forfeited recognizance in a criminal case.

2. Matters of defense originating before judgment cannot, when the defendant has been served, be set up by an affidavit of illegality; nor is such an affidavit available for the purpose of calling in question the truth of a recital in a judgment that no issuable defense had been filed in the case.

3. Where judgment was rendered against two cosureties upon a forfeited recognizance, and one of them, upon compromising and paying off the execution issued thereon, had it levied upon property of the other for the purpose of enforcing contribution, the latter could not arrest the progress of the execution by an affidavit of illegality alleging that the principal in the recognizance had, prior to its execution, conveyed to the levying surety, for the purpose of indemnifying him against loss, property of more than sufficient value to pay the amount of the recognizance. If, in such case, the levying surety was solvent, the remedy of the other would be to pay one half of the amount for which the execution had been compromised, and then compel an

accounting by the cosurety as to the property which had been pledged to him. If the latter was insolvent, resort could be had to appropriate equitable proceedings.

July 20, 1896.  By two Justices.

Affidavit of illegality.  Before Judge Lumpkin.  Fulton superior court.  September term, 1895.

*John L. Conley,* for plaintiff in error.
*King & Anderson,* contra.

Lumpkin, Justice.

A judgment absolute for $500 upon a forfeited recognizance in a criminal case was rendered against Manning and Weyman, as sureties, in Fulton superior court, by the judge of the superior court of the Stone Mountain circuit, then presiding. It recited that no issuable defense had been filed in the case. An execution was duly issued. Weyman, upon a compromise effected with the solicitor-general, paid that officer $400; and after having the execution transferred and assigned to himself, caused it to be levied upon the property of Manning for the purpose of obtaining contribution from him as a cosurety. The latter, not denying that he had been duly served, filed an affidavit of illegality alleging, among other things, that the judgment was illegal because taken upon mere motion of the solicitor-general of the Atlanta circuit in the criminal branch of Fulton superior court. The illegality also set up other matters of defense which manifestly originated before the judgment had been rendered; among these, an allegation that the judgment was illegal because, in point of fact, Manning had filed a sworn plea, setting up an issuable defense, which was ignored and judgment rendered as if no defense had been filed. One other ground of the illegality was, that the principal in the recognizance had, prior to its execution, conveyed to Weyman, for the purpose of indemnifying him against loss, property of more than sufficient value to pay the amount of the recognizance.

1. The affidavit of illegality does not distinctly raise the question that the judge of the superior court of the Stone Mountain circuit, presiding in the criminal section or branch of the superior court of Fulton county, had no jurisdiction to render the judgment against the sureties. It is inferable, however, that one of the purposes of the affidavit was to make this question. We therefore rule upon it in order to set it at rest. Under the acts referred to in the first head-note, there seems to be no doubt that this judge may at any time preside in the criminal division of Fulton superior court; and while so doing, as a necessary incident to his jurisdiction, may render judgments upon forfeited recognizances.

2. Nothing is better settled than that a defendant who has been served cannot, by an affidavit of illegality, go behind the judgment. If a judgment recites that it is rendered by the presiding judge without the intervention of a jury because no issuable defense has been filed in the case, it adjudicates the truth of this recital. If in point of fact the recital is incorrect, the judgment may be set aside upon a motion made in due time; but the remedy in such case is not by illegality. This is not a case in which the judgment can be collaterally attacked as being void upon its face. For aught disclosed by the record, it was perfectly regular, and the jurisdiction of the court to render it unquestionable. A case like the present is not to be confused with that class of cases in which the jurisdiction of the judge to render a verdict without the intervention of a jury depended upon the question whether or not the contract upon which the judgment was rendered was unconditional. In a case where it plainly and palpably appeared that the contract was not unconditional, a judgment rendered by the judge without a jury might be collaterally attacked as void; but in cases of doubt, everything would be presumed in favor of the jurisdiction, and even an error in adjudicating that a contract was unconditional could not

be attacked by illegality.  See *Georgia Railroad Co.* v. *Pendleton et al.*, 87 *Ga.* 751, 754.

3. Although, before or at the time of executing the recognizance, the principal may have conveyed and delivered to Weyman, one of the sureties, property sufficient to indemnify him against loss, this could not be treated as a payment to Weyman of the amount he was afterwards compelled to pay in cash in satisfaction of the judgment. This property might afford Weyman a means of reimbursing himself; and undoubtedly Manning, upon paying to Weyman one half of the amount required to compromise the execution, would, to that extent, be entitled to share in any benefit which Weyman might derive from a sale of the property.  But Manning must pay before he becomes entitled to this right.  The moment Weyman paid the $400 to the solicitor-general, he was entitled to have $200 of it immediately paid to him by Manning.  Then both would have an equal right to look to the property conveyed to Weyman for reimbursement.

There is nothing in the record to suggest Weyman's insolvency, and therefore it was incumbent upon Manning to settle with him in cash, and then compel an accounting as to the property which had been pledged to him by the principal.  If Weyman was insolvent, Manning could have fully protected himself by resorting to appropriate equitable proceedings.          *Judgment affirmed.*