MARSHALL v. HODGKINS, cashier, *et al.*

1. Where a creditor, whose debt was secured by a conveyance of land under section 1969 of the code, obtained judgment, reconveyed the land to the debtor, and subsequently acquiesced in a sale of the land under an execution in favor of another creditor, and claimed the proceeds of such sale in the sheriff's hands, the lien of the secured creditor attached to such proceeds, and the purchaser at the sheriff's sale acquired an unencumbered title.

2. In a contest for such proceeds, arising upon a rule against the sheriff, the lien of the secured creditor will prevail over judg-

ments rendered or liens created in favor of other creditors after the making of the security deed.

3. The evidence in the present case discloses with certainty that the creditor secured by deed, at the time of receiving the same, executed a bond for reconveyance, in accordance with the terms of the statute; and irrespective of the questions presented in the motion for a new trial, that creditor was manifestly entitled to the fund in the sheriff's hands.

November 16, 1896.  Argued at the last term.  SIMMONS, C. J., being disqualified, did not preside.

Money rule.     Before Judge Fish.     Macon superior court.   May term, 1895.

*Gustin, Guerry & Hall,* for plaintiff.     *Hardeman, Davis & Turner* and *J. W. Haygood,* for defendants.

ATKINSON, Justice.

On the 19th day of February, 1885, C. W. Reid, under a conveyance which recited that it was executed in accordance with the terms of and for the purposes expressed in section 1969 of the code, conveyed certain property to T. J. Marshall upon a consideration stated to be $800.00.  This deed was executed for the purpose of securing the payment of two notes for $400.00 each due by Reid to Marshall. On the 10th day of July, 1889, J. W. Sheffield & Co. obtained a judgment against Reid for the sum of $119.00, and execution issued upon this judgment on the 9th day of August, 1889.   At the June term, 1886, of the city court of Macon, N. M. Hodgkins, cashier, recovered a judgment against Reid for the sum of $300.00 besides interest, etc., upon which an execution was issued on the 13th day of November, 1886.   On the 26th day of November, 1891, Marshall reconveyed to Reid the land which Reid had conveyed to him, and the reconveyance was filed and recorded in the clerk's office of the superior court of Macon county on the 27th of November, 1891.   On the same day, the land was levied upon by the sheriff of Macon county.   On the 18th day of February, 1892, the execution in favor of J. W. Sheffield & Co. was likewise levied

38

upon the property reconveyed, as the property of Reid, and under this levy it was sold on the 16th day of November, 1893.   The execution in favor of Hodgkins, cashier, was never levied on the land, and it does not appear from the evidence when it was placed in the sheriff's hands. The money realized from the sale of the land in question was held up by the sheriff, and Thomas J. Marshall brought a rule against him and claimed it; to this rule N. M. Hodgkins, cashier, and J. W. Sheffield & Co. were made parties defendant.   Upon the trial of the case, it resulted in a verdict under which the fund realized from the sale of the property was awarded to the execution in favor of Hodgkins, cashier.   Marshall, the movant in the rule, made a motion for new trial upon the general grounds, and upon several other special assignments of error, which we do not deem it necessary here to consider.

It is difficult for us to conceive, under the facts of this case as they appear in the documentary evidence, upon what theory the money realized from the property sold could be appropriated to the payment of the execution in favor of Hodgkins.   Any such appropriation of the money must necessarily result in the judicial displacement of a vested contract lien.   Before the rendition of any of the judgments subsequently recovered against him, Reid, the defendant in execution, conveyed to Marshall the property sold, and from which the fund was realized, to secure the payment of certain promissory notes.   The deed itself recites that it was executed in accordance with the provisions of and for the purposes expressed in section 1969 of the code.   There is nothing to indicate that a bond to reconvey was not given by the grantee at the time of the execution of the conveyance.   The deed being silent as to this fact, and there being no evidence that the bond was not executed, it will be presumed that such a bond was given. *Henry* v. *McAllister*, 93 Ga. 671; *Pirkle* v. *Equitable Mortgage Co.*, decided at the last term, *ante*, 524.

This conveyence, by the very terms of the statute under which it was executed, invested Marshall, the creditor, with the complete legal title to the premises, and the only means by which Reid, or any subsequent creditor through him, could acquire any interest therein, was to pay the debt which the deed was given to secure. Until that debt was paid, the lien of no judgment rendered subsequent to the execution of the deed would attach to the property, and, therefore, when the grantee reconveyed the premises, the reconveyance was only for the purpose of effectuating the security, and even after reconveyance, a judgment lien would not attach in favor of any subsequent judgment creditor, until after the debt to secure which the deed was executed had been fully satisfied. It can make no difference that the property was eventually in fact brought to sale under one of the junior executions. The secured creditor could properly acquiesce in that sale, and allow the property to be sold, so that the purchaser would take a title freed from his lien, looking to the proceeds of the sale for the payment of his debt; and in a contest with creditors claiming judgment liens upon the fund, under judgments rendered subsequent to the execution of the deed by the common debtor, the lien of the secured creditor should prevail over such judgments. So that, irrespective of the other questions made in the record, Marshall, the secured creditor, was manifestly entitled to the fund in the sheriff's hands, and the verdict awarding it to the execution in favor of Hodgkins was contrary to law, and should have been set aside.                  *Judgment reversed.*