## BUSH, trustee, *et al. v.* BANK OF THOMASVILLE.

111 664
f111 855
111 664
113 1087

1. When an action is founded upon an unconditional contract in writing, the judge has power to render a judgment thereon without the intervention of a jury.

2. If the plaintiff's petition in such an action alleges that the contract of the defendant therein sued on was secured by a deed to land executed by him, and prays for a special judgment against the land, and the judge in rendering his judgment upon the note, incorporates therein a special lien upon the land, this latter part of the judgment, even if erroneous or void, does not invalidate the entire judgment, for the remainder of it is good and, by operation of law, constitutes a lien upon the land effectual from the date of the deed.

3. Where, after obtaining such a judgment, the plaintiff filed and had recorded a deed to the land and had the land levied on and sold, and the fund was brought into court for distribution, other judgment creditors, whose judgments were older than the one above mentioned but younger than the deed given to secure the note, could not attack the younger judgment on the ground that the deed given to secure the note was infected with usury.

Argued May 21, — Decided August 7, 1900.

Distribution of money. Before Judge Spence. Decatur superior court. November term, 1899.

*R. H. Powell & Son* and *W. C. Worrill,* for plaintiffs in error.
*Bower & Bower* and *A. L. Hawes,* contra.

SIMMONS, C. J. It appears from the record, that Clifton borrowed from the Bank of Thomasville $7,000, for which sum he gave his promissory note with a stipulation for the payment of $700 liquidated damages (presumably attorney's fees) in case the note had to be collected by suit. For the purpose of securing the note, he made the bank a deed to certain land on Nov. 14, 1892. In 1898 the bank brought suit against Clifton on the note, and prayed for a judgment on the note, and also for a special lien on the land. No defense was made, and the judge rendered a judgment on the note and granted the prayer of the petition for a special lien on the land. This was done without the intervention of a jury. In 1893 and 1894 other creditors obtained common-law judgments against Clifton. Subsequently Clifton was adjudicated a bankrupt, and Bush was appointed trustee. In 1899 the bank had its execution, based on the judgment rendered in 1898, levied on the land.

Bush filed a bill in the United States court, seeking to enjoin the levy and sale under this execution. A restraining order was granted by the judge of that court, and subsequently he issued an order allowing the sheriff and Bush, the trustee, to sell the land under the bank's execution, and requiring them to deposit in another designated bank the proceeds of the sale. He ordered that the trustee, representing the other judgment creditors, litigate in the State courts with the bank as to the priority of their judgments. The bank filed a motion in the superior court of Decatur county, praying that the fund arising from the sale be turned over to it, setting up the facts in regard to the loan, the deed, and the judgment, and claiming a lien superior to that of the other creditors. Those creditors, some through Bush, the trustee, and some independently, filed interventions in which they claimed that their judgments were superior to the judgment of the bank, (1) because the judgment in favor of the bank and granting a special lien on the land was rendered by the court without the intervention of a jury; and (2) because the deed made by Clifton to the bank was infected with usury and therefore void, and they had the right, as Clifton was insolvent, to suggest usury in his stead. The court sustained a demurrer to these interventions, and awarded the fund to the Bank of Thomasville. The trustee and intervening creditors excepted.

1, 2. The suit by the bank against Clifton was a common-law action predicated upon an unconditional contract in writing. Under the constitution and laws of this State, the judge has power, without the intervention of a jury, to render a judgment upon such contracts where no issuable defense is filed by the defendant. There was none filed by Clifton to the suit by the bank. It was clearly the duty of the judge to render judgment upon the contract. It was claimed, however, by the plaintiffs in error, that the judgment granting a special lien upon the land could not be rendered by the judge without the intervention of a jury, and that the judgment was therefore void. Even if the verdict of a jury should have been had, setting up the special lien, we think the fact that the judge rendered it without a jury would not make the judgment void. Unless it plainly and palpably appears that the court had no

authority to render the judgment, the latter would not be void. If there is doubt as to whether the judge has jurisdiction to render the judgment and he decides in favor of his power, while such ruling may be erroneous, the judgment will not be void. If the judge's attention had been called to the matter when he rendered the judgment and he had decided in favor of his jurisdiction, although he may have decided that question erroneously, the judgment would not be void, and, if unexcepted to and unreversed, is a valid and binding judgment. *Georgia R. Co.* v. *Pendleton*, 87 *Ga.* 751; *Everett* v. *Westmoreland*, 92 *Ga.* 673; *Crow* v. *Mortgage Co.*, 92 *Ga.* 815; *Manning* v. *Weyman*, 99 *Ga.* 59; *Griffin* v. *Smyly*, 105 *Ga.* 475. Even assuming, for the sake of argument, that this is not sound, we still think the judgment rendered by the court on the note and the facts that appeared on the trial of the question of the distribution of the money would give the bank a lien superior to that of the other creditors. The deed to the bank was executed in November, 1892. The judgments of the other creditors were subsequent to that date. It appeared at the trial that the deed was made for the purpose of securing the payment of the note. "Where one took a deed to land to secure a debt, and gave bond to reconvey upon its payment, and subsequently brought suit and recovered a general judgment against the debtor, and filed and had recorded a deed reconveying the land, and thereupon caused it to be levied on and sold, such judgment was entitled to the fund arising from the sale, in preference to an older judgment rendered since the conveyance to secure the debt was made. It is not necessary that such a judgment should set forth any specific lien or right of priority; but where the facts appear from the untraversed answer of the sheriff, the fund will be awarded to such judgment." *McAlpin* v. *Bailey*, 76 *Ga.* 687. See also *Bennett* v. *McConnell*, 88 *Ga.* 177. Moreover, the law as it stood at the time (Code of 1882, § 1970) expressly declared that such a judgment upon a note which a deed had been given to secure should take lien upon the land prior to any other judgment or incumbrance against the defendant.

3. The next question which arises for consideration is, whether a creditor holding a common-law judgment can at-

tack another common-law judgment, obtained by another cred-
itor, on the ground that there was usury in it. The trial judge
held that this could not be done, and we think his ruling was
correct. There are cases, some of which were cited by counsel
for the plaintiffs in error, holding that one creditor can, in the
distribution of the estate of an insolvent debtor, suggest and
show usury in the claim or demand of another creditor. Upon
reading these cases it will be seen that none of them involved
a judgment at law, except those cases involving judgments
foreclosing mortgages. These latter decisions are put upon a
section of the code, and do not contravene the general principle
that a judgment obtained without fraud or collusion settles
every question which could have been made or litigated by the
defendant, or, as was said by McCay, J., in *Gatewood* v. *Bank*,
49 *Ga.* 45, 48, quoting with approval an opinion in 2 Hill
(S. C.), Ch. 474, the original "contract has been merged into
the judgment, which imports absolute verity; and it is conclu-
sively presumed that the parties made all the defenses allowed
by law, and that the judgment is the conclusion of law on the
true facts of the transaction." He also said (p. 49), with ref-
erence to the identical question now under consideration: "As
a matter of course, if there be fraud in any of the other grounds
for equitable interference, there is no difficulty; but if the only
objection to the judgment is that the original debt was usuri-
ous, the doctrine seems to be settled that it is too late to ask
even chancery to interfere, after a regular judgment at law.
Nor are we able to see how the case is strengthened when the
complainant is a creditor of the defendant instead of the de-
fendant himself. He is clearly a privy of the defendant; his
only interest in the matter is that the defendant is his debtor.
He comes into the controversy through the defendant; and it
would entirely upset the whole doctrine of the conclusiveness
of judgments, if they were liable to be attacked on their merits
by other creditors of defendant. . . So far as I have been able
to find cases of interference against a judgment by others than
the defendant, they are all for want of jurisdiction or for fraud
and collusion. And but a moment's consideration will show
that this must be the proper rule. There never would be an
end of litigations, if, after the defendant has had his day in

court and a judgment has been pronounced, every creditor shall have his day also, and have the issues re-examined." See also *Phillips* v. *Walker*, 48 *Ga.* 55; *Foster* v. *Thrasher*, 45 *Ga.* 519. There being in the present case no charge of fraud or collusion between the bank and Clifton, and no allegation of any accident or mistake, we think the judgment is valid and binding on Clifton. He, therefore, could not attack it on the ground that there was usury in the note on which the suit was founded, for that question is settled against him by the judgment. His creditors, standing in his shoes by reason of their privity with him as debtor, can not attack the judgment on any ground on which he is concluded. The record does·not show any usury upon its face, and the judgment, as to him, imports absolute.verity and concludes him on the question of usury. For these reasons, we think the court was right in sustaining the demurrer and awarding the fund in controversy to the Bank of Thomasville.

*Judgment affirmed. · All the Justices concurring.*