## WEST v. EQUITABLE MORTGAGE COMPANY.

1. Where one constitutes another his agent to negotiate a loan, agreeing to give him a certain commission for his services, and the agent obtains the loan from a third person and agrees with the lender to deposit with him, out of the commissions of the agent, a certain percentage of the amount loaned, as a guaranty of its payment, this does not constitute the intermediary the agent of the lender or make the loan usurious, although the latter charged and received the maximum legal rate of interest on the loan.
2. If the intermediary should be a corporation, allowed by its charter to negotiate loans, in which the lender owns stock, the fact that the lender, in addition to receiving a lawful rate of interest for the use of the money loaned, also shares, as a stockholder, in the profits and commissions of the intermediary does not make the loan usurious.

Argued November 9, — Decided November 30, 1900.

Complaint. Before Judge Hart. Greene superior court. July 21, 1900.

*James Davison*, for plaintiff in error.
*Payne & Tye* and *J. B. Park Jr.*, contra.

SIMMONS, C. J. West, through his agent Weaver, made application to the Atlanta Trust and Banking Company, hereinafter called the Atlanta company, a Georgia corporation, to negotiate for him a loan which was to be secured by a deed to certain land. For this he agreed to pay the Atlanta company a commission of $270. The Atlanta company submitted the application to the Equitable Mortgage Company, a corporation of Missouri. The latter company accepted the security and made the loan, taking West's promissory notes for $1,612.50, maturing in five years, bearing interest at six per cent. per annum, and secured by deed to the land. West failed to pay these notes, and suit was brought thereon by the mortgage company. West defended by pleading usury. On the trial the judge directed a verdict in favor of the plaintiff, and the defendant made a motion for a new trial. This motion was overruled, and he

excepted.    The evidence showed that Weaver, West's agent, had actually received but $1,342.50 and that West had received but about $1,320 of the money loaned; that the mortgage company, regarding the loan as of $1,500, added thereto $112.50 and took the five-year notes bearing interest at six per cent. per annum; that it also retained three per cent. of the amount loaned, or $45, as part of a guaranty fund, belonging to the Atlanta company, to secure in part the payment of the loan; that the mortgage company paid the Atlanta company five per cent. per annum as interest on the money thus retained, and agreed to return it to the Atlanta company in the event it was not required to make good losses on loans made by the mortgage company through the Atlanta company; and that West had agreed to pay the Atlanta company $270 for its services in procuring the loan.    It further appeared  that the Atlanta company had been capitalized at $50,000, and allowed by its charter to negotiate loans; that subsequently the legislature had amended its charter by authorizing it to increase its capital stock to $100,000, and to do a general banking business; and that the mortgage company had bought up the additional $50,000 of stock, and had thus become a large stockholder in the Atlanta company.    Loans of the character of the one here involved, made by this mortgage company, except in so far as concerns the three per cent. deposit and the own-  . ership of stock in the Atlanta company, have on previous occasions been before this court, and it has already been decided that such a loan is not usurious, unless, indeed, it is made so by the deposit of the guaranty fund or by the ownership of stock by the lender in the Atlanta company.    See *Green* v. *Equitable Mortgage Co.*, 107 *Ga.* 536.    Thus the present case presents two questions, both new to this court, which are the only questions argued here.

1. Did the deposit of three per cent. of the loan with the mortgage company by the Atlanta company, as a fund to guarantee the payment of the loan, make the Atlanta company the agent of the mortgage company so as to make the loan usurious?    Did the making of such deposit show usury in any other way?    We think not.    The mortgage company made its loan and contracted for a certain amount, not exceeding the lawful rate of interest, for the use of its money.    More than this it did not receive or contract for, for the three per cent. did not in any sense become its property. That deposit remained the property of the Atlanta company, and

that company was paid interest therefor by the mortgage company. In the event that the deposit was needed to reimburse the mortgage company for losses on loans made through the Atlanta company, the deposit was to be so used; otherwise, it was to remain the property of the Atlanta company and to be ultimately returned to that company. With this arrangement the borrower could have no concern, nor was the lender benefited by it save in so far as it afforded additional security for the loan. The lender did not participate in the commissions of the intermediary, but merely required this deposit of money, belonging to the intermediary, as protection against loss. This might very well have served, not only to strengthen the security of the mortgage company, but to make the Atlanta company more careful in investigating applications for loans. And the Atlanta company might very well have been willing to make such a deposit, in order to establish and maintain business credit with the mortgage company, and to secure without delay loans for its own customers. On the facts above recited, we do not see how the Atlanta company could be considered the agent of the mortgage company. West agreed to pay the Atlanta company $270 for securing the loan. So far as appears, he received the amount of the loan applied for, less this commission to the Atlanta company. Having agreed that this intermediary should retain such an amount, it was no concern of his what contract the two companies made with each other as to this amount, so the mortgage company did not receive for the use of its money more than the lawful rate of interest. This it did not do by adding $112.50 to the amount loaned and contracting for six per cent. per annum thereon. Had the Atlanta company agreed to make a deposit of half or even all of its commission, it would have been no concern of West. The Atlanta company might even have guaranteed the full payment of the loan, principal and interest, as was done in the transaction dealt with in Keagy v. Trout, 85 Va. 390. It was simply a business transaction between the two companies, dealing at arm's length. So long as it did not result in the lender's receiving for the use of its money more than the lawful rate of interest, it did not infect the loan with usury.

2. Does the fact that the mortgage company became a stockholder in the Atlanta company, coupled with the further fact that the Atlanta company received commissions for making this loan, in

which commissions the mortgage company, as a stockholder, shared, infect the loan with usury? In other words, the commission received by the Atlanta company having gone into the business of the company, and the mortgage company having been, as a stockholder, benefited thereby in addition to receiving the lawful rate of interest on the loan, was the transaction usurious? We think not. A corporation, duly chartered, is a legal entity. It is separate and distinct from its stockholders. If it charges usury on loans, it alone incurs the penalty provided by law. If it collects usurious amounts of interest and declares and pays dividends, a stockholder receiving such dividends is not liable to the borrower. The stockholder is no more concerned than a creditor whose debt has been paid by an individual who had charged and collected usury on loans. Certainly the creditor would not be liable for the usury paid. These views are so well expressed by Lewis, President of the Supreme Court of Appeals of Virginia, in the case of Keagy *v.* Trout, 85 Va. 390, 7 S. E. Rep. 329, that we content ourselves with extracting a portion of his opinion in that case and adopting it as our own. In that case the lender was a director and large stockholder in the company which, upon the application of the borrower, negotiated the loan. The intermediary company had charged the borrower a commission of $1,500 on a loan of $15,000. The lender, who contracted for the full lawful rate of interest upon the loan, was familiar with the whole transaction. In answer to a claim that the charge for commission was a mere contrivance to cover an usurious transaction, it was said (p. 398): "The fact that Henry S. Trout, by whom the $15,000 loan was made, is a stockholder and director in the trust company,— a fact upon which the appellants lay great stress,— does not at all affect the case. The company is an artificial person, created by law, with rights and duties altogether separate and distinct from those of the individuals who, from time to time, may compose it. They have a separate existence, separate interests, and separate liabilities, and so far as the right of an individual member of the company to its earnings is concerned, he is entitled only to his proportionate share of the surplus profits; so that when in the present case the $1,500 was paid to the company, no part of it was the money of Henry S. Trout. His transaction in loaning the $15,000, and that of the company in negotiating and guarantying the loan, were wholly separate and distinct transactions. Both were

bona fide, without evasion or the taint of fraud or suspicion; and there is no principle upon which the charge of usury can be sustained."

For the reasons given we think that no usury in the transaction was shown, and that the judge did not err in directing a verdict or in overruling the motion for a new trial.

*Judgment affirmed.  All the Justices concurring.*