HARVARD, trustee, *v.* DAVIS, sheriff, *et al.*
</div>

1. Where a borrower of money executes a deed to secure the debt and receives a bond for title as provided in the Civil Code, § 3306, and suit is instituted for a general judgment and to subject the property to payment of the debt as provided in the Civil Code, § 6037, and within four months next after rendition of the judgment, but more than four months after the debt and record of the security deed, the debtor is adjudged a bankrupt upon his voluntary petition in bankruptcy, the judgment is not invalid on account of section 67 (f) of the bankruptcy act, and ineffective for the purpose of bringing the property to sale to pay the debt.

2. An attorney at law who is a notary public, and who negotiates a loan and receives a fee from one of the parties for negotiating the loan and examining the title and preparing all papers connected with the loan, is not disqualified, on account of interest, from acting as the official attesting witness to the deed.

3. It sufficiently appears that the contract evidenced by the notes and deed under consideration was contemplated by the parties to be a Georgia contract; and the laws of this State on the subject of interest and usury are applicable.

4. Where a broker engaged in lending money takes a note and security deed in his own name, and the note bears a less rate of interest than eight per cent., and in addition to the interest specified in the note the lender deducts an amount called a "brokerage fee," which if added to the stipulated interest would not make an amount exceeding eight per cent. per annum on the principal debt during the time of the loan, the exaction of such amount does not render the contract usurious.

(a) Upon a plea of usury the burden of proof is upon the party pleading it. If an agent of a lender deducted for himself an amount as commissions or fees of such magnitude as, when added to the conventional rate of interest and other charges, would make a sum exceeding eight per cent. per annum for the use of the money during the time of the loan, but if the lender did not authorize the charge and had no knowledge of it and did not share therein, the transaction would not on account thereof be rendered usurious relatively to the lender.

(b) The knowledge of the agent would not be imputed to the lender.

(c) Whether the attorney at law was the agent of the lender or borrower need not be decided.

5. An original triplicate of the schedule of creditors and their claims, required to be filed by a bankrupt in the court of bankruptcy under the bankruptcy act, is an office paper, and a certified copy thereof is primary evidence.

6. In view of the ruling announced in the fourth headnote, if certain evidence offered to support the plaintiff's contention that the attorney negotiating the loan was agent of the lender was admissible, its rejection would not be cause for reversal, in the absence of evidence to show that the lender had notice of the retention of the fees or participated therein.

7. There was no error in refusing the application to require the surrender of the property to the receiver for administration in the court of bankruptcy.

August 16, 1916.

Application to surrender property. Before Judge George. Dooly superior court. June 30, 1915.

A borrower of money executed a promissory note, payable five years after date, for the amount of the loan, with interest after maturity at the rate of 8 per cent. per annum; also five separate notes for the annual interest on the principal debt until maturity of the note first mentioned, calculated on the basis of 7 per cent. per annum. The interest notes were made to bear interest from their respective maturities at the rate of 8 per cent. per annum. The maker also executed to the lender a security deed under the provisions of the Civil Code, §§ 3306 et seq., 6037, conveying cer-

tain land to secure the debt, and received a bond for title. The two interest notes first maturing were paid. Subsequently suit was instituted upon the principal note and remaining interest notes, to which no defense was filed, and a judgment was rendered in the superior court against the defendant, which also declared a special lien against the property. After a quitclaim deed for the purpose of levy had been filed and recorded as prescribed by the statute, the sheriff levied upon the land. Before the day of sale, and within the same month in which the judgment was rendered, the defendant upon his voluntary petition in bankruptcy was adjudged a bankrupt. Subsequently, upon an application of the bankrupt, a receiver was appointed in the court of bankruptcy, who, upon instruction from that court, made application to the State court to require the sheriff to surrender the property to him to be administered in the court of bankruptcy. The alleged ground upon which it was sought to take the property from the sheriff was, that, under provisions of section 67 of the bankruptcy act, the judgment upon the fi. fa. issued, having been rendered within four months next before the adjudication in bankruptcy, was void and afforded no authority for seizure of the property. In this connection it was also alleged that the security deed did not purport to create a lien on the property, but to convey title, and afforded no authority for the sheriff to seize the property, and, whatever would be its lawful effect, it was invalid, and especially as to the applicant occupying the position of a creditor, because (*a*) it was infected with usury; (*b*) the official attesting witness was the agent and attorney at law for the lender, which rendered him incompetent, and the record of the deed based on attestation by him was ineffectual for the purpose of giving notice. It was also alleged that owing to the stress of the times the property, if exposed to sale by the sheriff, would not bring its full value, thereby causing a loss to creditors; whereas, if delivered to the receiver who by law had greater facilities for selling, it could be sold at a better advantage. After hearing evidence the judge refused to order the sheriff to surrender the property, and the applicant excepted. The other material facts appear in the opinion.

*DuPont Guerry* and *Arthur H. Codington,* for plaintiff.

*Whipple & McKenzie* and *Hardeman, Jones, Park & Johnston,* for defendants.

ATKINSON, J. 1. It is declared in the Civil Code, § 3306: "Whenever any person in this State conveys any real property by deed to secure any debt to any. person loaning or advancing said vendor any money or to secure any other debt, and shall take a bond for titles back to said vendor upon the payment of such debt or debts, or shall in like manner convey any personal property by bill of sale and take an obligation binding the person to whom said property is conveyed to reconvey said property upon the payment of said debt or debts, such conveyance of real or personal property shall pass the title of said property to the vendee till the debt or debts which said conveyance was made to secure shall be fully paid, and shall be held by the courts of this State to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agreeably to the terms of the contract, and not a mortgage." The interest which a grantee takes under a deed executed under this law is not absolute in its broadest sense, but is restricted to holding title as security for the debt. For that purpose it places legal title out of the grantor, but on payment of the debt the right of the grantee to hold it ceases. It is a species of security effective from the date of the instrument when duly recorded, and is enforceable against the property by levy and sale under proceedings elsewhere provided for in the Code (Civil Code, § 6037). Though of higher dignity, it is similar to a lien, and upon sale of the property in accordance with the statute last mentioned it is transferred from the property to the proceeds of the sale. *Marshall* v. *Hodgkins,* 99 *Ga.* 592 (27 S. E. 748); *Bush* v. *Bank of Thomasville,* 111 *Ga.* 664 (36 S. E. 900). The language of the code section last mentioned is: "In cases where a contract to purchase has been made, or bond for title made, or the purchase-money has been partly paid, or in cases where a deed to secure a debt has been executed, and the purchase-money or secured debt has been reduced to judgment by the payee, assignee, or holder of said debt, the holder of the legal title, or, if dead, his executor or administrator, shall, without order of any court, make and execute to said defendant in fi. fa., or, if he be dead, to his executor or administrator, a quitclaim conveyance to such real or personal property, and file and have the same recorded in the clerk's office; and thereupon the same may be levied

upon and sold as other property of said defendant, and the proceeds shall be applied to the payment of such judgment; or, if there be conflicting claims, then the same shall be applied as determined in proceedings for that purpose." It does not require the judgment mentioned in this section to give the grantee in the security deed the security which he already had, but, relatively to the security, it is merely a part of the judicial apparatus provided by law for carrying the security into effect. To this extent it operates like a judgment of foreclosure of a mortgage, and, so far as necessary to enforcement of the pre-existing security, it is not invalidated on account of the provisions of section 67 (f) of the bankruptcy act of 1898 (Fed. Stat. Ann. 693), prohibiting enforcement of liens against the property of the bankrupt within four months before the adjudication in bankruptcy. In this connection see *Reed* v. *Equitable Trust Co.*, 115 *Ga.* 780 (42 S. E. 102), and cit.; *Parks* v. *Baldwin*, 123 *Ga.* 869 (51 S. E. 722); *Virginia-Carolina Chemical Co.* v. *Rylee*, 139 *Ga.* 669 (78 S. E. 27), and cit.; Collier on Bankruptcy (10th ed.), 964-967; In re McKane, 158 Fed. 647; Metcalf v. Barker, 187 U. S. 165 (23 Sup. Ct. 67, 47 L. ed. 122). The judgment might be good in part and bad in part (*Bush* v. *Bank of Thomasville*, supra; *Shahan* v. *Myers*, 130 *Ga.* 724, 61 S. E. 702; *Latimer* v. *Sweat*, 125 *Ga.* 475, 54 S. E. 673); and the fact that the scope of the judgment would be broad enough to create a lien on the property generally of the defendant would not destroy its efficacy as a means of subjecting this property by enforcing the security.

2. It appeared that the firm of which the attorney was a member received, as compensation for negotiating the loan, $300, of which the attorney received one half. It was contended that this gave the attorney such a pecuniary interest as, under the ruling in *Southern Iron & Equipment Co.* v. *Voyles*, 138 *Ga.* 258 (75 S. E. 248, 41 L. R. A. (N. S.) 375, 29 Ann. Cas. (1913D) 369), would disqualify him from acting as the official attesting witness to the security deed, and that the record of the deed based on such attestation was void. In the case cited the question was whether a stockholder in a corporation, who was also an officer authorized to attest deeds, was disqualified, by reason of his relation to the corporation, to officially attest a bill of sale executed by another person to the corporation. On the basis that a person could not attest

a deed to himself, and that whatever would affect the property and business of the corporation would also affect the stockholder, it was held, independently of statute, and as a matter of public policy, that the stockholder was so interested as to disqualify him from acting as an official attesting witness. But the facts of that case were different from those now under consideration. In the instant case the attorney was not interested either as grantee or as grantor in the deed. The witness did not have an interest in the property, but was merely to participate in fees to be paid his firm as compensation for services in negotiating the loan; and the case falls within the principle of *Austin* v. *Southern Home B. & L. Asso.*, 122 *Ga.* 439 (6), 448 (50 S. E. 382); *Jones* v. *Howard*, 99 *Ga.* 451 (4), 457 (27 S. E. 765, 59 Am. St. R. 231); *Sloss* v. *Southern Mutual B. & L. Asso.*, 97 *Ga.* 401 (23 S. E. 849). In the *Austin* case it was held: "One who is an agent and attorney at law of a lender of money, who represents such lender in negotiations for a particular loan, and who is also a notary public, may in the latter capacity lawfully attest a security deed given to secure the loan negotiated by him."

3. The notes were payable in Illinois. The deed was executed in Georgia on land in this State, and described the notes intended to be secured by the deed, and declared that the deed should be a Georgia contract, and operative as provided under the sections of the code relating to deeds to secure debts in this State. It clearly appears that the parties contracted with reference to the Georgia laws, and under the circumstances the laws of this State on the subject of interest apply. Civil Code, § 3430; *First National Bank* v. *Rambo*, 143 *Ga.* 665 (85 S. E. 840).

4. It was alleged, that the security deed was infected with usury, because the loan agreed on, which purported to be secured by the terms of the security deed, was $8,000, and the amount received was only $7,000, which the borrower did not receive personally but simply by means of the fact that it was applied to the payment of his debts, and the remaining $1,000 was paid over by the lender to his attorneys as commission for the making of the loan and for other services rendered in the examination of the titles to the property; and that the amount so paid to the attorneys was excessive for any services rendered to the borrower either directly or indirectly, and amounted to a device for the exaction

of usury, or interest on the principal loan in excess of eight per cent. The burden of proving that the deed was infected with usury was upon the applicant who alleged usury. The evidence showed that the loan was negotiated through a firm engaged in the practice of law and the negotiation of farm loans. The loan was for a period of five years, and the contract contained a clause by which the maturity might be advanced on account of delinquency in the matter of paying interest, or for failure of the borrower in certain other respects to comply with his contract. The rate of interest specified was 7 per cent. per annum until maturity. Out of the proceeds of the loan the firm negotiating the same deducted a fee of $300, and the lender (who was a broker) a brokerage fee of $80, in advance. Inasmuch as the rate of interest charged was 7 per cent. per annum, there was a margin of 1 per cent. per annum which could have been charged without exceeding the legal rate or rendering the debt usurious. *Georgia Southern &c. R. Co. v. Mercantile Trust Co.,* 94 *Ga.* 306 (3), 321 (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153) ; *Green* v. *Equitable Mortgage Co.,* 107 *Ga.* 536 (33 S. E. 869) ; *Union Savings Bank* v. *Dottenheim,* 107 *Ga.* 606 (34 S. E. 217) ; *West* v. *Equitable Mortgage Co.,* 112 *Ga.* 377 (37 S. E. 357, 81 Am. St. R. 59) ; *Stewart* v. *Slocumb,* 120 *Ga.* 762 (48 S. E. 311). One per cent. per annum on $8,000 for five years is $400. Under these circumstances, the mere fact that the lender deducted $80 in advance for his brokerage fee would not render the transaction usurious; for, when added to the interest agreed to be paid, the aggregate amount received and retained by the lender would not have exceeded the legal rate of 8 per cent. It was urged, however, that the firm that negotiated the loan were agents of the lender; and when the $300 deducted by them should be taken into consideration as having been deducted in advance, the amount thus taken would exceed the legal rate of interest and infect the deed with usury. In passing upon this contention it is unnecessary, under the facts of the case, to determine whether the evidence was sufficient to show that the firm, in negotiating the loan, were agents of the lender; for there was no evidence tending to show that the lender authorized them to deduct any sum from the proceeds of the loan, or had any knowledge thereof or participated therein. In *McLean* v. *Camak,* 97 *Ga.* 804 (25 S. E. 493), it was held: "Although the maximum rate of in-

terest was reserved upon a given loan, the mere fact that the lender's agent charged the borrower an additional sum as commission for making the loan did not render the transaction usurious as to the lender, when he did not authorize such charge, had no knowledge of the same, and did not share in the commission. . . In determining whether or not, as matter of fact, the lender had knowledge of the agreement between his agent and the borrower for the payment of such commission, the law of implied, as well as express, notice may be invoked; but the agent's own knowledge of the fact that he did charge the commission, uncommunicated to his principal, is not imputable to the latter, the doctrine of constructive notice not being pertinent to the inquiry." See also *Wacasie* v. *Radford,* 142 *Ga.* 113 (82 S. E. 442).

5. There was also an exception to the rejection of an original triplicate of the schedule filed by the bankrupt in the court of bankruptcy, which showed that the bankrupt had included the judgment in his schedule in bankruptcy after the property had been levied on by the sheriff. The paper was rejected upon objection being interposed that a certified copy was higher evidence. The paper was properly an office paper in the court of bankruptcy (Bankruptcy Act 1898, § 59 (c) ; Foster's Code, 38, § 62), and a certified copy was primary evidence. Civil Code, § 5798-9; *Cannon* v. *Gorham,* 136 *Ga.* 167 (71 S. E. 142, 24 Ann. Cas. 39) ; *Georgia Engineering &c. Co.* v. *Horton,* 135 *Ga.* 58 (3), 59 (68 S. E. 794). It was offered for the purpose of showing that the judgment was void, under the bankruptcy act, as an illegal preference and a lien. It has been pointed out that the judgment was not relied on as a claim of lien, but merely as an instrumentality for enforcing a prior existing security. The evidence would have been immaterial if admitted.

6. There were objections to rulings of the court in rejecting certain evidence which was offered by the applicant to support his contention that the firm negotiating the loan were agents of the lender; but in view of the ruling in the fourth division of this opinion, if otherwise admissible, its rejection would not be any cause for reversal in the absence of evidence sufficient to show that the lender had notice of the retention of the fees by the firm or participated therein.

7. The possibility of selling the land to better advantage

through instrumentality of the receiver will not suffice to deprive the plaintiff of the right of proceeding with the collection of the debt in the way provided by law through the offices of the sheriff. There was no error in refusing the application.

*Judgment affirmed. All the Justices concur.*